| | |
|---|---|
| **DISTRICT COURT, JEFFERSON COUNTY, COLORADO**<br>Court Address:<br>100 Jefferson County Parkway, Golden, CO 80401 | **EFILED Document**<br>**CO Jefferson County District Court 1st JD**<br>**Filing Date: Feb 01 2013 02:02PM MST**<br>**Filing ID: 49253142**<br>**Review Clerk: Beth B** |
| **Plaintiff:**<br>2010-1 RADC/CADC VENTURE, LLC<br><br>v.<br><br>**Defendants:**<br>KAVEH BRAL and<br>HASHEM MIKAIL | ▲ **COURT USE ONLY** ▲ |
| Attorneys: Lino S. Lipinsky de Orlov, #13339<br>            McKenna Long & Aldridge LLP<br>Address:   1400 Wewatta Street, Suite 700<br>            Denver, CO  80202<br>Telephone: (303) 634-4000<br>Facsimile:  (303) 634-4400<br>E-mail:    llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |
| **DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT** | |

1. **This cover sheet shall be filed with each pleading containing an initial claim for relief in every district court civil (CV) case, and shall be served on all parties along with the pleading.** It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. **Check one of the following:**

   ☐ This case is governed by Chief Justice Directive ("CJD") 11-02 and the "Colorado Civil Access Pilot Project Rules Applicable to Business Actions in District Court" because:

   - The case is filed within the period of January 1, 2012 through December 31, 2013; *AND*

   - The case is filed in a Pilot Project participating jurisdiction (Adams County, Arapahoe County, Denver County, Gilpin County, or Jefferson County); *AND*

   - The case is a "Business Action" as defined in CJD 11-02, Amended Appendix A for inclusion in the Pilot Project.

   ☑ This case is not governed by the Colorado Civil Access Pilot Project Rules.

   *NOTE: **Cases subject to the Colorado Civil Access Pilot Project must be governed by the Rules in CJD 11-02** (available at http://www.courts.state.co.us/Courts/Supreme_Court/Directives/Index.cfm). The presiding judge will review Item 2 for accuracy. The designation on this initial Cover Sheet will control unless the Court orders otherwise.*

**3.  If this case is not governed by the Colorado Civil Access Pilot Project Rules as indicated in Item 2, check the following:**

☐This case is governed by C.R.C.P. 16.1 because:

- The case is not a class action, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding; *AND*

- A monetary judgment over $100,000 is not sought by any party against any other single party. This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

☑This case is not governed by C.R.C.P. 16.1 because (check ALL boxes that apply):

☐The case is a class action, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding.

☑A monetary judgment over $100,000 is sought by any party against any other single party. This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

*NOTE: In any case to which C.R.C.P. 16.1 does not apply, the parties may elect to use the simplified procedure by separately filing a Stipulation to be governed by the rule within 35 days of the at-issue date. See C.R.C.P. 16.1(b)(1) (re: case type) and C.R.C.P. 16.1(e) (re: amount in controversy). In any case to which C.R.C.P. 16.1 applies, the parties may opt out of the rule by separately filing a Notice to Elect Exclusion (JDF 602) within 45 days of the at-issue date. See C.R.C.P. 16.1(d).*

☐A Stipulation or Notice with respect to C.R.C.P. 16.1 has been separately filed with the Court, indicating:

☐C.R.C.P. 16.1 applies to this case.

☐C.R.C.P. 16.1 does not apply to this case.

**4.**  ☐This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38.  (Checking this box is optional.)

Date:  February 1, 2013

Signature of Party or Attorney for Party

DN:32239614.1

<table>
<tr><td colspan="2">

**DISTRICT COURT, JEFFERSON COUNTY, COLORADO**
Court Address:
100 Jefferson County Parkway, Golden, CO 80401

</td><td>

EFILED Document
CO Jefferson County District Court 1st JD
Filing Date: Feb 01 2013 02:02PM MST
Filing ID: 49253142
Review Clerk: Beth B

</td></tr>
</table>

| | |
|---|---|
| **Plaintiff:** <br> 2010-1 RADC/CADC VENTURE, LLC <br><br> v. <br><br> **Defendants:** <br> KAVEH BRAL and <br> HASHEM MIKAIL | ▲ COURT USE ONLY ▲ |
| Attorneys:   Lino S. Lipinsky de Orlov, #13339 <br>          McKenna Long & Aldridge LLP <br> Address:   1400 Wewatta Street, Suite 700 <br>          Denver, CO  80202 <br> Telephone:  (303) 634-4000 <br> Facsimile:  (303) 634-4400 <br> E-mail:   llipinsky@mckennalong.com <br><br> *Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number: <br><br> Division: |

|  |
|---|
| **COMPLAINT** |

Plaintiff, 2010-1 RADC/CADC Venture, LLC ("Creditor"), complains against defendants, Kaveh Bral ("Bral") and Hashem Mikail a/k/a Halston Mikail ("Mikail"; collectively, "Guarantors"), as follows:

## PARTIES

1.      Creditor is a Delaware limited liability company with its principal place of business at 4601 College Boulevard, Suite 300, Leawood, Kansas 66211.

2.      Upon information and belief, Bral is a citizen of California who resides at 13030 Evanston Street, Los Angeles, California 90049.

3.      Upon information and belief, Mikail is a citizen of California who resides at 704 North Walden Avenue, Beverly Hills, California  90210, and whose business address is Wilshire Capital Group, 2919 Wilshire Boulevard, Santa Monica, California  90403.

## JURISDICTION AND VENUE

4.     This civil action arises from contracts relating to the acquisition and development of certain real property (the "Property") located in Jefferson County, Colorado.  The Property is more particularly described in **Exhibit A** submitted herewith.

5.     Venue in Jefferson County is proper pursuant to C.R.C.P. 98(c)(1) because Guarantors are nonresidents of Colorado.

## ALLEGATIONS

### The Denver Structures, LLC Transaction

6.     On or about June 8, 2007, Denver Structures, LLC executed and delivered to New Frontier Bank a promissory note (the "Denver Structures Note") in the original principal amount of $476,000.00.  The Denver Structures Note provided, *inter alia*, that Denver Structures, LLC would be in default under the Denver Structures Note if it failed to make any payment required thereunder, in full, when due.  A copy of the Denver Structures Note is submitted herewith as **Exhibit B**.

7.     On or about June 8, 2007, Bay Structures, LLC executed a Deed of Trust (the "Denver Structures Deed of Trust") on the "Denver Structures, LLC Property," as defined and described in Exhibit A submitted herewith, to secure the Denver Structures Note.  A copy of the Denver Structures Deed of Trust is submitted herewith as **Exhibit C**.

8.     On or about June 8, 2007, Bral executed a Guaranty (the "Denver Structures Bral Guaranty"), pursuant to which Bral unconditionally personally guaranteed Denver Structures, LLC's performance and payment of its obligations arising under the Denver Structures Note.  A copy of the Denver Structures Bral Guaranty is submitted herewith as **Exhibit D**.

9.     On or about June 8, 2007, Mikail executed a Guaranty (the "Denver Structures Mikail Guaranty"), pursuant to which Mikail unconditionally personally guaranteed Denver Structures, LLC's performance and payment of its obligations arising under the Denver Structures Note.  A copy of the Denver Structures Mikail Guaranty is submitted herewith as **Exhibit E**.

10.     On or about August 26, 2010, pursuant to an Allonge (the "Denver Structures Allonge"), the Federal Deposit Insurance Corporation ("FDIC"), acting in its capacity as receiver for New Frontier Bank, sold, assigned, and transferred to Creditor all rights in and to the Denver Structures Note.  A copy of the Denver Structures Allonge is submitted herewith as **Exhibit F**.

11.     On or about September 1, 2010, pursuant to an Assignment of Real Estate Deed of Trust, the FDIC, acting in its capacity as receiver for New Frontier Bank, sold, assigned, and transferred to Creditor all of New Frontier Bank's rights in and to the Denver Structures Deed of Trust and all other documents and instruments evidencing, securing, or relating to the

2

indebtedness and obligations secured by the Denver Structures Deed of Trust. A copy of the Assignment of Real Estate Deed of Trust is submitted herewith as **Exhibit G**.

### The Arvada Structures, LLC Transactions

12. On or about February 28, 2007, Arvada Structures, LLC executed and delivered to New Frontier Bank a promissory note (the "First Arvada Structures Note") in the original principal amount of $11,000,000.00. The First Arvada Structures Note, *inter alia*, provided that Arvada Structures, LLC would be in default under the First Arvada Structures Note if it failed to make any payment required thereunder, in full, when due. A copy of the First Arvada Structures Note is submitted herewith as **Exhibit H**.

13. On or about February 28, 2007, Arvada Structures, LLC executed a Deed of Trust (the "First Arvada Structures Deed of Trust") on the "Arvada Structures, LLC Property," as defined and described in Exhibit A submitted herewith, to secure the First Arvada Structures Note. A copy of the First Arvada Structures Deed of Trust is submitted herewith as **Exhibit I**.

14. On or about February 28, 2007, Bral executed a Guaranty (the "First Arvada Structures Bral Guaranty"), pursuant to which Bral unconditionally personally guaranteed Arvada Structures, LLC's performance and payment of its obligations arising under the First Arvada Structures Note. A copy of the First Arvada Structures Bral Guaranty is submitted herewith as **Exhibit J**.

15. On or about February 28, 2007, Mikail executed a Guaranty (the "First Arvada Structures Mikail Guaranty"), pursuant to which Mikail unconditionally personally guaranteed Arvada Structures, LLC's performance and payment of its obligations arising under the First Arvada Structures Note. A copy of the First Arvada Structures Mikail Guaranty is submitted herewith as **Exhibit K**.

16. On or about August 26, 2010, pursuant to an Allonge (the "First Arvada Structures Allonge"), the FDIC, acting in its capacity as receiver for New Frontier Bank, sold, assigned, and transferred to Creditor all rights in and to the First Arvada Structures Note. A copy of the First Arvada Structures Allonge is submitted herewith as **Exhibit L**.

17. On or about September 1, 2010, pursuant to a second Assignment of Real Estate Deed of Trust, the FDIC, acting as receiver for New Frontier Bank, sold, assigned, and transferred to Creditor all of New Frontier Bank's rights in and to the First Arvada Structures Deed of Trust and all other documents and instruments evidencing, securing, or relating to the indebtedness and obligations secured by the First Arvada Structures Deed of Trust. A copy of such second Assignment of Real Estate Deed of Trust is submitted herewith as **Exhibit M**.

18. On or about September 20, 2007, Arvada Structures, LLC executed and delivered to New Frontier Bank a promissory note (the "Second Arvada Structures Note") in the original principal amount of $3,000,000.00. The Second Arvada Structures Note provided, *inter alia*, that Arvada Structures, LLC would be in default under the Second Arvada Structures Note if it

3

failed to make any payment required thereunder, in full, when due. A copy of the Second Arvada Structures Note is submitted herewith as **Exhibit N**.

19.     On or about September 20, 2007, Arvada Structures, LLC executed a Deed of Trust (the "Second Arvada Structures Deed of Trust") on the "Arvada Structures, LLC Property," as defined and described in Exhibit A submitted herewith, to secure the Second Arvada Structures Note. A copy of the Second Arvada Structures Deed of Trust is submitted herewith as **Exhibit O**.

20.     On or about September 20, 2007, Bral executed a Guaranty (the "Second Arvada Structures Bral Guaranty"), pursuant to which Bral unconditionally personally guaranteed Arvada Structures, LLC's performance and payment of its obligations arising under the Second Arvada Structures Note. A copy of the Second Arvada Structures Bral Guaranty is submitted herewith as **Exhibit P**.

21.     On or about September 20, 2007, Mikail executed a Guaranty (the "Second Arvada Structures Mikail Guaranty"), pursuant to which Mikail unconditionally personally guaranteed Arvada Structures, LLC's performance and payment of its obligations arising under the Second Arvada Structures Note. A copy of the Second Arvada Structures Mikail Guaranty is submitted herewith as **Exhibit Q**.

22.     On or about August 26, 2010, pursuant to an Allonge (the "Second Arvada Structures Allonge"), the FDIC, acting in its capacity as receiver for New Frontier Bank, sold, assigned, and transferred to Creditor all rights in and to the Second Arvada Structures Note. A copy of the Second Arvada Structures Allonge is submitted herewith as **Exhibit R**.

23.     On or about September 1, 2010, pursuant to a third Assignment of Real Estate Deed of Trust, the FDIC, acting as receiver for New Frontier Bank, sold, assigned, and transferred to Creditor all of New Frontier Bank's rights in and to the Second Arvada Structures Deed of Trust and all other documents and instruments evidencing, securing, or relating to the indebtedness and obligations secured by the Second Arvada Structures Deed of Trust. A copy of the third Assignment of Real Estate Deed of Trust is submitted herewith as **Exhibit S**.

### The Material Breaches of the Denver Structures Note, the First Arvada Structures Note and the Second Arvada Structures Note

24.     Denver Structures, LLC failed to make the payments due and owing under the terms and conditions of the Denver Structures Note on or about June 8, 2009, and thereafter.

25.     Arvada Structures, LLC failed to make the payments due and owing under the terms and conditions of the First Arvada Structures Note and the Second Arvada Structures Note on or about February 28, 2009, and thereafter.

26.     Denver Structures, LLC is in material default under the Denver Structures Note because it failed to make the payments due under the terms and conditions of the Denver Structures Note on or about June 8, 2009, and thereafter.

27.     Arvada Structures, LLC is in material default under the First Arvada Structures Note and the Second Arvada Structures Note because it failed to make the payments due under the terms and conditions of the First Arvada Structures Note and the Second Arvada Structures Note on or about February 28, 2009, and thereafter.

28.     Each of the Denver Structures Bral Guaranty, the First Arvada Structures Bral Guaranty, the Second Arvada Structures Bral Guaranty, the Denver Structures Mikail Guaranty, the First Arvada Structures Mikail Guaranty, and the Second Arvada Structures Mikail Guaranty (collectively, the "Guaranties") provides that the guarantor shall be liable to Creditor for all of Creditor's expenses of enforcement, including, without limitation, reasonable attorneys' fees and legal expenses.

## CLAIM FOR RELIEF

### Breach of the Guaranties

29.     Creditor incorporates the allegations contained in paragraphs 1 through 28 above, as though fully set forth herein.

30.     Pursuant to the terms and conditions of the Denver Structures Bral Guaranty, the First Arvada Structures Bral Guaranty, and the Second Arvada Structures Bral Guaranty, Creditor is entitled to recover from Bral all sums due and owing under the Denver Structures Note, the First Arvada Structures Note and the Second Arvada Structures Note (collectively, the "Notes").

31.     Pursuant to the terms and conditions of the Denver Structures Mikail Guaranty, the First Arvada Structures Mikail Guaranty, and the Second Arvada Structures Mikail Guaranty, Creditor is entitled to recover from Mikail all sums due and owing under the Notes.

32.     Creditor does not waive, modify, relinquish, or forbear any other rights, remedies, or additional courses of action available to it under the Guaranties, or applicable law, including, without limitation, the right to enforce Creditor's rights in and to any and all collateral for satisfaction of Denver Structures, LLC's obligations arising under the terms and conditions of the Denver Structures Note or for satisfaction of Arvada Structures, LLC's obligations arising under the terms and conditions of the First Arvada Structures Note or the Second Arvada Structures Note.

WHEREFORE, Creditor respectfully requests that the Court enter an order and decree rendering judgment in Creditor's favor, and against Guarantors, as follows:

(a)     In the amount of the unpaid principal due on the Notes and unpaid prejudgment interest thereon at the respective rates set forth in the Notes;

(b)     For post-judgment interest thereon, at the highest rate permitted by law;

(c)     For all other sums due under the Notes and the Guaranties, including, without limitation, late fees and prepayment fees;

(d)     For Creditor's reasonable attorney's fees, court costs, and other legal expenses incurred in this action, pursuant to the respective terms and conditions of the Notes and the Guaranties; and

(e)     Such other relief as the Court deems just and proper.

DATED: February 1, 2013.

                              McKENNA LONG & ALDRIDGE LLP

                              s/ Lino S. Lipinsky de Orlov
                              _____
                              Lino S. Lipinsky de Orlov, #13339

                              Counsel for Plaintiff, 2010-1 RADC/CADC
                              Venture, LLC

Plaintiff's Address:
4601 College Boulevard, Suite 300
Leawood, Kansas 66211

*This document was e-filed pursuant to C.R.C.P. Rule 121. A duly signed original of this document is on file at the law firm of McKenna Long & Aldridge LLP and is available upon request*

DN:32237472.7

6

| | |
|---|---|
| **DISTRICT COURT, JEFFERSON COUNTY, COLORADO**<br>Court Address:<br>100 Jefferson County Parkway, Golden, CO 80401 | EFILED Document<br>CO Jefferson County District Court 1st JD<br>Filing Date: Feb 01 2013 02:02PM MST<br>Filing ID: 49253142<br>Review Clerk: Beth B |
| **Plaintiff:**<br>2010-1 RADC/CADC VENTURE, LLC<br><br>v.<br><br>**Defendants:**<br>KAVEH BRAL and<br>HASHEM MIKAIL | ▲  **COURT USE ONLY**  ▲ |
| Attorneys:     Lino S. Lipinsky de Orlov, #13339<br>                    McKenna Long & Aldridge LLP<br>Address:       1400 Wewatta Street, Suite 700<br>                    Denver, CO  80202<br>Telephone:   (303) 634-4000<br>Facsimile:     (303) 634-4400<br>E-mail:          llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |
| **EXHIBIT A<br>TO<br>COMPLAINT** | |

# EXHIBIT A

**Denver Structures, LLC Property:**

Parcel A:
Lot 5, The Meadows at Westwoods Shopping Center, according to the plat thereof recorded February 28, 2002 under Reception No. F1432695, County of Jefferson, State of Colorado.

Parcel B:
Those beneficial easements as set forth in Article II of Declaration of Reciprocal Easements and Restrictions recorded February 11, 2003 under Reception No. F1673475.

The property is located in Jefferson County at 15220 West 64th Avenue, Arvada, Colorado 80007.

**Arvada Structures, LLC Property:**

Lot 4, Westwoods Shopping Center Filing No. 2, according to the plat recorded June 18, 2003 at Reception No. F1781698, County of Jefferson, State of Colorado;

And

Tract "A", The Meadows at Westwoods Shopping Center, according to the plat recorded February 28, 2002 at Reception No. F1432695, County of Jefferson, State of Colorado;

Together with those easement rights contained in Declaration of Reciprocal Easement and Restrictions recorded February 11, 2003 at Reception No. F1673475, ratified by Ratification of Common Area Maintenance Agreement for Westwoods Shopping Center and Ratification of Declaration of Reciprocal Easements and Restrictions recorded March 17, 2003 at Reception No. F1700516 and First Amendment to Declaration of Reciprocal Easements and Restrictions recorded June 23, 2003 at Reception No. F1784807.

Together with perpetual non-exclusive easements for parking as created by Declaration of Reciprocal Parking Easements recorded February 25, 2004 at Reception No. F1969952;

County of Jefferson, State of Colorado.

The property is located in Jefferson County at 15200 West 64th Avenue, Arvada, Colorado 80007.

| **DISTRICT COURT, JEFFERSON COUNTY, COLORADO**<br>Court Address:<br>100 Jefferson County Parkway, Golden, CO 80401 | EFILED Document<br>CO Jefferson County District Court 1st JD<br>Filing Date: Feb 01 2013 02:02PM MST<br>Filing ID: 49253142<br>Review Clerk: Beth B |
|---|---|
| **Plaintiff:**<br>2010-1 RADC/CADC VENTURE, LLC<br><br>v.<br><br>**Defendants:**<br>KAVEH BRAL and<br>HASHEM MIKAIL | ▲ **COURT USE ONLY** ▲ |
| Attorneys: Lino S. Lipinsky de Orlov, #13339<br>        McKenna Long & Aldridge LLP<br>Address:   1400 Wewatta Street, Suite 700<br>        Denver, CO  80202<br>Telephone: (303) 634-4000<br>Facsimile: (303) 634-4400<br>E-mail:    llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |
| **EXHIBIT B<br>TO<br>COMPLAINT** | |

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 198382-01 | DENVER STRUCTURES, LLC | | 06/08/07 | TFS |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $476,000.00 | Not Applicable | 8.750% | 06/08/09 | Commercial |
| | | Creditor Use Only | | |

## PROMISSORY NOTE
### (Commercial - Draw)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is June 8, 2007. The parties and their addresses are:

**LENDER:**
NEW FRONTIER BANK
2425 35th Avenue
Greeley, Colorado 80634
Telephone: (970) 339-5100

**BORROWER:**
DENVER STRUCTURES, LLC
a Delaware Limited Liability Company
3220 NEBRASKA AVENUE
SANTA MONICA, California 90404

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.

B. **Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

D. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

E. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

F. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, amounts advanced from time to time under the terms of this Note up to the maximum total principal balance of $476,000.00 (Principal) plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note matures or this obligation is accelerated.

All advances made will be made subject to the terms of a separate construction loan agreement and all other terms and conditions of the Loan.

**3. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 8.750 percent (Interest Rate).

A. **Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time, plus an additional 4.000 percent, until paid in full.

B. **Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

C. **Accrual.** Interest accrues using an Actual/360 days counting method.

**4. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

A. **Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.

**Title Insurance.** A(n) Title Insurance fee of $805.00 payable from separate funds on or before today's date.

**Tax Certificate.** A(n) Tax Certificate fee of $25.00 payable from separate funds on or before today's date.

**Recording - Mortgage.** A(n) Recording - Mortgage fee of $37.00 payable from separate funds on or before today's date.

**Loan Origination.** A(n) Loan Origination fee of $2,380.00 payable from separate funds on or before today's date.

**Flood Determination.** A(n) Flood Determination fee of $20.00 payable from separate funds on or before today's date.

**5. PAYMENT.** I agree to pay this Note in installments of accrued interest beginning September 8, 2007, and then on the same day in each 3rd month thereafter. I agree to pay the entire unpaid Principal and any accrued but unpaid interest on June 8, 2009.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to any charges that I owe other than principal and interest, then to interest that is due, and finally to principal that is due. If you and I agree to a different application of payments, we will describe our agreement on this Note. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**6. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**7. LOAN PURPOSE.** The purpose of this Loan is FOR THE DEVELOPMENT OF ADDITIONAL RETAIL STORES.



DENVER STRUCTURES, LLC
Colorado Promissory Note
CO/4XXtb85Ilu000059000005586020060707N          ©1996 Bankers Systems, Inc., St. Cloud, MN Exãera          Initials

**8. ADDITIONAL TERMS. WAIVER OF JURY TRIAL.** To the fullest extent permitted by law, the parties hereto waive the right to a trial by jury in any action brought under or in any way related to this Agreement.

**CREDIT INFORMATION.** I agree and authorize you to obtain credit information about me from time to time (for example, by requesting a credit report) and to report to others your credit experience with me (such as a credit reporting agency). I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**9. SECURITY.** The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document |
|---|---|
| Deed Of Trust - 15220 WEST 64TH AVENUE | BAY STRUCTURES, LLC |

**10. DEFAULT.** I will be in default if any of the following occur:

    **A. Payments.** I fail to make a payment in full when due.

    **B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Note or any other obligations I have with you.

    **C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

    **D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Note.

    **E. Other Documents.** A default occurs under the terms of any other Loan Document.

    **F. Other Agreements.** I am in default on any other debt or agreement I have with you.

    **G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

    **H. Judgment.** I fail to satisfy or appeal any judgment against me.

    **I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

    **J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

    **K. Property Transfer.** I transfer all or a substantial part of my money or property.

    **L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

    **M. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

    **N. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Note or that the prospect for payment or performance of the Loan is impaired for any reason.

**11. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**12. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

    **A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

        **(1)** You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

        **(2)** You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

        **(3)** You may release, substitute or impair any Property securing this Note.

        **(4)** You, or any institution participating in this Note, may invoke your right of set-off.

        **(5)** You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

        **(6)** I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

        **(7)** I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

    **B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**13. REMEDIES.** After I default, you may at your option do any one or more of the following.

    **A. Acceleration.** You may make all or any part of the amount owing by the terms of this Note immediately due.

    **B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

    **C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

    **D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate.

    **E. Termination.** You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

    **F. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.

    My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.



Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

G. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**14. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note or any other Loan Document. Expenses include, but are not limited to, reasonable attorneys' fees after default and referral to an attorney not your salaried employee, court costs, and other collection costs. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Note. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**15. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**16. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Note is in effect:

A. Power. I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

B. Authority. The execution, delivery and performance of this Note and the obligation evidenced by this Note are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my Property is subject.

C. Name and Place of Business. Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**17. APPLICABLE LAW.** This Note is governed by the laws of Colorado, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**18. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**19. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**20. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**21. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**22. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**23. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**24. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

DENVER STRUCTURES, LLC

By
HASHEM MIKAIL, MANAGER
By
KAVEH BRAL, MANAGING MEMBER

**DISTRICT COURT, JEFFERSON COUNTY, COLORADO**
Court Address:
100 Jefferson County Parkway, Golden, CO 80401

EFILED Document
CO Jefferson County District Court 1st JD
Filing Date: Feb 01 2013 02:02PM MST
Filing ID: 49253142
Review Clerk: Beth B

**Plaintiff:**
2010-1 RADC/CADC VENTURE, LLC

v.

**Defendants:**
KAVEH BRAL and
HASHEM MIKAIL

▲ **COURT USE ONLY** ▲

| | |
|---|---|
| Attorneys: | Lino S. Lipinsky de Orlov, #13339 |
| | McKenna Long & Aldridge LLP |
| Address: | 1400 Wewatta Street, Suite 700 |
| | Denver, CO  80202 |
| Telephone: | (303) 634-4000 |
| Facsimile: | (303) 634-4400 |
| E-mail: | llipinsky@mckennalong.com |

*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC*

Case Number:

Division:

**EXHIBIT C**
**TO**
**COMPLAINT**

R $31.00
$0.00

2007071091
06/19/2007 10:26:30 AM 6 Page(s)
Jefferson County, Colorado

**Recorded Electronically**
ID _____
County _____
Date _____ Time _____
Simplifile.com 800.460.5657

Space Above This Line For Recording Data

# DEED OF TRUST
### (With Future Advance Clause)

**DATE AND PARTIES.** The date of this Deed Of Trust (Security Instrument) is JUNE 8, 2007. The parties and their addresses are:

GRANTOR:
BAY STRUCTURES, LLC
A California Limited Liability Company
3220 NEBRASKA AVENUE
SANTA MONICA, California 90404

TRUSTEE:
PUBLIC TRUSTEE OF JEFFERSON COUNTY, COLORADO

LENDER:
NEW FRONTIER BANK
Organized and existing under the laws of Colorado
2425 35th Avenue
Greeley, Colorado 80634

**1. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:

PARCEL A:

LOT 5, THE MEADOWS AT WESTWOODS SHOPPING CENTER, ACCORDING TO THE PLAT THEREOF RECORDED FEBRUARY 28, 2002 UNDER RECEPTION NO. F1432695, COUNTY OF JEFFERSON, STATE OF COLORADO

PARCEL B:

THOSE BENEFICIAL EASEMENTS AS SET FORTH IN ARTICLE II OF DECLARATION OF RECIPROCAL EASEMENTS AND RESTRICTIONS RECORDED FEBRUARY 11, 2003 UNDER RECEPTION NO. F1673475

The property is located in JEFFERSON County at 15220 WEST 64TH AVENUE, ARVADA, Colorado 80007.
Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, all water and riparian rights, wells, ditches, reservoirs and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**2. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time will not exceed $476,000.00. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**3. SECURED DEBTS.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

A. Specific Debts. The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 198382-01, dated June 8, 2007, from DENVER STRUCTURES, LLC (Borrower) to Lender, with a loan amount of $476,000.00. One or more of the debts secured by this Security Instrument contains a future advance provision.

B. All Debts. All present and future debts from DENVER STRUCTURES, LLC to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Grantor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities.

C. Sums Advanced. All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**4. PAYMENTS.** Grantor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

DENVER STRUCTURES, LLC
Colorado Deed Of Trust
CO/4XXb85llc0000590000558602006070Y © 1996 Bankers Systems, Inc., St. Cloud, MN Exper̃e

Initials _____
Page 1

5. WARRANTY OF TITLE. Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

6. PRIOR SECURITY INTERESTS. With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:

   A. To make all payments when due and to perform or comply with all covenants.

   B. To promptly deliver to Lender any notices that Grantor receives from the holder.

   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

7. CLAIMS AGAINST TITLE. Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

8. DUE ON SALE OR ENCUMBRANCE. Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

9. TRANSFER OF AN INTEREST IN THE GRANTOR. If Grantor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if:

   A. A beneficial interest in Grantor is sold or transferred.

   B. There is a change in either the identity or number of members of a partnership or similar entity.

   C. There is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity.

However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Security Instrument.

10. WARRANTIES AND REPRESENTATIONS. Grantor makes to Lender the following warranties and representations which will continue as long as this Security Instrument is in effect:

   A. Power. Grantor is duly organized, and validly existing and in good standing in all jurisdictions in which Grantor operates. Grantor has the power and authority to enter into this transaction and to carry on Grantor's business or activity as it is now being conducted and, as applicable, is qualified to do so in each jurisdiction in which Grantor operates.

   B. Authority. The execution, delivery and performance of this Security Instrument and the obligation evidenced by this Security Instrument are within Grantor's powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which Grantor is a party to or to which Grantor is or any of Grantor's property is subject.

   C. Name and Place of Business. Other than previously disclosed in writing to Lender, Grantor has not changed Grantor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name. Without Lender's prior written consent, Grantor does not and will not use any other name and will preserve Grantor's existing name, trade names and franchises.

11. PROPERTY CONDITION, ALTERATIONS AND INSPECTION. Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor will not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Grantor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Grantor will not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender will give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property will be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

12. AUTHORITY TO PERFORM. If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

13. ASSIGNMENT OF LEASES AND RENTS. Grantor irrevocably assigns, grants, conveys to Lender as additional security all the right, title and interest in the following (Property).

A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to any extensions, renewals, modifications or replacements (Leases).

B. Rents, issues and profits, including but not limited to security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Grantor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Grantor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default. Grantor will not collect in advance any Rents due in future lease periods, unless Grantor first obtains Lender's written consent. Upon default, Grantor will receive any Rents in trust for Lender and Grantor will not commingle the Rents with any other funds. When Lender so directs, Grantor will endorse and deliver any payments of Rents from the Property to Lender. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Grantor agrees that this Security Instrument is immediately effective between Grantor and Lender. This Security Instrument will remain effective during any statutory redemption period until the Secured Debts are satisfied. Unless otherwise prohibited or prescribed by state law, Grantor agrees that Lender may take actual possession of the Property without the necessity of commencing any legal action or proceeding. Grantor agrees that actual possession of the Property is deemed to occur when Lender notifies Grantor of Grantor's default and demands that Grantor and Grantor's tenants pay all Rents due or to become due directly to Lender. Immediately after Lender gives Grantor the notice of default, Grantor agrees that either Lender or Grantor may immediately notify the tenants and demand that all future Rents be paid directly to Lender. As long as this Assignment is in effect, Grantor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Grantor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Grantor or any party to the Lease defaults or fails to observe any applicable law, Grantor will promptly notify Lender. If Grantor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance. Grantor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Grantor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Grantor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

**14. DEFAULT.** Grantor will be in default if any of the following occur:

A. **Payments.** Grantor or Borrower fail to make a payment in full when due.

B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against Grantor, Borrower, or any co-signer, endorser, surety or guarantor of this Security Instrument or any other obligations Borrower has with Lender.

C. **Business Termination.** Grantor merges, dissolves, reorganizes, ends its business or existence, or a partner or majority owner dies or is declared legally incompetent.

D. **Failure to Perform.** Grantor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

E. **Other Documents.** A default occurs under the terms of any other document relating to the Secured Debts.

F. **Other Agreements.** Grantor is in default on any other debt or agreement Grantor has with Lender.

G. **Misrepresentation.** Grantor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. **Judgment.** Grantor fails to satisfy or appeal any judgment against Grantor.

I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. **Name Change.** Grantor changes Grantor's name or assumes an additional name without notifying Lender before making such a change.

K. **Property Transfer.** Grantor transfers all or a substantial part of Grantor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section.

L. **Property Value.** Lender determines in good faith that the value of the Property has declined or is impaired.

M. **Material Change.** Without first notifying Lender, there is a material change in Grantor's business, including ownership, management, and financial conditions.

N. **Insecurity.** Lender determines in good faith that a material adverse change has occurred in Borrower's financial condition from the conditions set forth in Borrower's most recent financial statement before the date of this Security Instrument or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**15. REMEDIES.** On or after default, Lender may use any and all remedies Lender has under state or federal law or in any document relating to the Secured Debts, including, without limitation, the power to sell the Property or foreclose on installments without acceleration. Any amounts advanced on Grantor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Grantor's default.

Subject to any right to cure, required time schedules or any other notice rights Grantor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of Grantor's default at anytime thereafter.

If there is a default, Trustee will, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash. Trustee will give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon the sale of the Property, to the extent not prohibited by law, and at such time purchaser is legally entitled to it, Trustee shall make and deliver a deed to the Property sold which conveys title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all monies advanced for repairs, taxes, insurance liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to persons legally entitled to it. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**16. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, Grantor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Security Instrument or any other document relating to the Secured Debts. Grantor agrees to pay expenses for Lender to inspect and preserve the Property and for any recordation costs of releasing the Property from this Security Instrument. Expenses include, but are not limited to, reasonable attorneys' fees after default and referral to an attorney who is not a salaried employee of the Lender, court costs, and other collection costs. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts. In addition, to the extent permitted by the United States Bankruptcy Code, Grantor agrees to pay the reasonable attorneys' fees incurred by Lender to protect Lender's rights and interests in connection with any bankruptcy proceedings initiated by or against Grantor.

**17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Grantor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

B. Except as previously disclosed and acknowledged in writing to Lender, Grantor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

C. Grantor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Grantor will take all necessary remedial action in accordance with Environmental Law.

D. Except as previously disclosed and acknowledged in writing to Lender, Grantor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Grantor or any tenant of any Environmental Law. Grantor will immediately notify Lender in writing as soon as Grantor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.



5

F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Grantor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Grantor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Grantor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Grantor agrees, at Grantor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Grantor's obligations under this section at Grantor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Grantor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Grantor will provide Lender with collateral of at least equal value to the Property without prejudice to any of Lender's rights under this Security Instrument.

L. Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

**18. CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. ESCROW FOR TAXES AND INSURANCE.** Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

**20. CO-SIGNERS.** If Grantor signs this Security Instrument but is not otherwise obligated to pay the Secured Debts, Grantor does so only to convey Grantor's interest in the Property to secure payment of the Secured Debts and Grantor does not agree by signing this Security Instrument to be personally liable on the Secured Debts. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws.

**21. WAIVERS.** Except to the extent prohibited by law, Grantor waives all appraisement and homestead exemption rights relating to the Property.

**22. CONSTRUCTION LOAN.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

**23. APPLICABLE LAW.** This Security Instrument is governed by the laws of Colorado, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**24. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Grantor's obligations under this Security Instrument are independent of the obligations of any other Grantor. Lender may sue each Grantor individually or together with any other Grantor. Lender may release any part of the Property and Grantor will still be obligated under this Security Instrument for the remaining Property. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Grantor.

**25. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Grantor and Lender. This Security Instrument and any other documents relating to the Secured Debts are the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**26. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

**27. NOTICE, FINANCIAL REPORTS, ADDITIONAL DOCUMENTS AND RECORDING TAXES.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Grantor will be deemed to be notice to all Grantors. Grantor will inform Lender in writing of any change in Grantor's name, address or other application information. Grantor will provide Lender any financial statements or information Lender requests. All financial statements and information Grantor gives Lender will be correct and complete. Grantor agrees to pay all expenses, charges and taxes in connection with the preparation and recording of this Security Instrument. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and to confirm Lender's lien status on any Property, and Grantor agrees to pay all expenses, charges and taxes in connection with the preparation and recording thereof. Time is of the essence.

**SIGNATURES.** By signing, Grantor agrees to the terms and covenants contained in this Security Instrument. Grantor also acknowledges receipt of a copy of this Security Instrument.

GRANTOR:
BAY STRUCTURES, LLC
By
HASHEM MIKAIL, EXECUTIVE MANAGER
By
KAVEH BRAL, EXECUTIVE MANAGER

**ACKNOWLEDGMENT.**
(Business or Entity)
County OF Boulder, State OF Colorado ss.
This instrument was acknowledged before me this 8th day of June, 2007 by HASHEM MIKAIL - EXECUTIVE MANAGER and KAVEH BRAL - EXECUTIVE MANAGER of BAY STRUCTURES, LLC a Limited Liability Company on behalf of the Limited Liability Company.
My commission expires:

(Notary Public)

NOTARY PUBLIC
PENNY DOYLE
STATE OF COLORADO
MY COMMISSION EXPIRES: 06-20-2012

| | |
|---|---|
| **DISTRICT COURT, JEFFERSON COUNTY, COLORADO**<br>Court Address:<br>100 Jefferson County Parkway, Golden, CO 80401<br><br>**Plaintiff:**<br>2010-1 RADC/CADC VENTURE, LLC<br><br>v.<br><br>**Defendants:**<br>KAVEH BRAL and<br>HASHEM MIKAIL | <span style="color:red">EFILED Document<br>CO Jefferson County District Court 1st JD<br>Filing Date: Feb 01 2013 02:02PM MST<br>Filing ID: 49253142<br>Review Clerk: Beth B</span><br><br><br>▲  **COURT USE ONLY**  ▲ |
| Attorneys:   Lino S. Lipinsky de Orlov, #13339<br>                    McKenna Long & Aldridge LLP<br>Address:     1400 Wewatta Street, Suite 700<br>                    Denver, CO  80202<br>Telephone:  (303) 634-4000<br>Facsimile:   (303) 634-4400<br>E-mail:        llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |
| **EXHIBIT D**<br>**TO**<br>**COMPLAINT** | |

# GUARANTY
(Specific Debt - Limited)

**DATE AND PARTIES.** The date of this Guaranty is June 8, 2007. The parties and their addresses are:

**LENDER:**
NEW FRONTIER BANK
2425 35th Avenue
Greeley, Colorado 80634
Telephone: (970) 339-5100

**BORROWER:**
DENVER STRUCTURES, LLC
a Delaware Limited Liability Company
3220 NEBRASKA AVENUE
SANTA MONICA, California 90404

**GUARANTOR:**
KAVEH BRAL
13030 EVANSTON STREET
LOS ANGELES, California 90049

**1. DEFINITIONS.** As used in this Guaranty, the terms have the following meanings:

**A. Pronouns.** The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together. "You" and "your" refer to the Lender.

**B. Note.** "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

**C. Property.** "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

**2. SPECIFIC DEBT GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with the Borrower from time to time, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of the following described Debt(s) of the Borrower including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

A promissory note or other agreement, No. 198382-01, dated June 8, 2007, from DENVER STRUCTURES, LLC (Borrower) to you, in the amount of $476,000.00.

My liability will not exceed $476,000.00 of the principal amount outstanding at default, plus accrued interest, attorneys' fees and collection costs, when allowed by law, and all other costs, fees and expenses agreed to be paid under all agreements evidencing the Debt and securing the payment of the Debt. You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

**3. EXTENSIONS.** I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

**4. UNCONDITIONAL LIABILITY.** I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

**5. BANKRUPTCY.** If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims by you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

**6. REVOCATION.** I agree that this is an absolute and unconditional Guaranty. This Guaranty cannot be revoked and will remain in effect until the Debt is paid in full.

**7. PROPERTY.** I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

KAVEH BRAL
Colorado Guaranty
CO/4XXb8SItu0000S9000055B6020060707Y

©1996 Bankers Systems, Inc., St. Cloud, MN

Initials
Page 1

B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Borrower, or any co-signer, endorser, surety or guarantor of this Guaranty or any Debt.

C. **Death or Incompetency.** I die or am declared legally incompetent.

D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Guaranty.

E. **Other Documents.** A default occurs under the terms of any other document relating to the Debt.

F. **Other Agreements.** I am in default on any other debt or agreement I have with you.

G. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. **Judgment.** I fail to satisfy or appeal any judgment against me.

I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. **Name Change.** I change my name or assume an additional name without notifying you before making such a change.

K. **Property Transfer.** I transfer all or a substantial part of my money or property.

L. **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

M. **Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason.

9. **WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. **Additional Waivers.** In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property.

(4) You, or any institution participating in the Debt, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability. In addition, until the obligations of the Borrower to Lender have been paid in full, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, partner, or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control or a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

B. **No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

C. **Waiver of Claims.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

10. **REMEDIES.** After the Borrower or I default, you may at your option do any one or more of the following.

A. **Acceleration.** You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

B. **Sources.** You may use any and all remedies you have under state or federal law or in any documents relating to the Debt.

C. **Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on default.

D. **Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the Secured Debts.

E. **Termination.** You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

F. **Attachment.** You may attach or garnish my wages or earnings.

G. **Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

KAVEH BRAL
Colorado Guaranty
CO/4XXbBSilu00005200005586020060707Y

©1986 Bankers Systems, Inc., St. Cloud, MN ExSereIS

Initials _____
Page 2

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

H. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

11. COLLECTION EXPENSES AND ATTORNEYS' FEES. On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

12. WARRANTIES AND REPRESENTATIONS. I have the right and authority to enter into this Guaranty. The execution and delivery of this Guaranty will not violate any agreement governing me or to which I am a party.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

13. RELIANCE. I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and I have signed this Guaranty to induce you to extend such credit. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from any loans and financial accommodations resulting in the creation of indebtedness guarantied hereby.

14. APPLICABLE LAW. This Guaranty is governed by the laws of Colorado, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

15. AMENDMENT, INTEGRATION AND SEVERABILITY. This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing and executed by you and me. This Guaranty is the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

16. ASSIGNMENT. If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

17. INTERPRETATION. Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS. Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

19. CREDIT INFORMATION. I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

20. SIGNATURES. By signing, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR:

KAVEH BRAL
Individually

| **DISTRICT COURT, JEFFERSON COUNTY, COLORADO**<br>Court Address:<br>100 Jefferson County Parkway, Golden, CO 80401 | **EFILED Document**<br>**CO Jefferson County District Court 1st JD**<br>**Filing Date: Feb 01 2013 02:02PM MST**<br>**Filing ID: 49253142**<br>**Review Clerk: Beth B** |
|---|---|
| **Plaintiff:**<br>2010-1 RADC/CADC VENTURE, LLC<br><br>v.<br><br>**Defendants:**<br>KAVEH BRAL and<br>HASHEM MIKAIL | ▲  **COURT USE ONLY**  ▲ |
| Attorneys:  Lino S. Lipinsky de Orlov, #13339<br>              McKenna Long & Aldridge LLP<br>Address:    1400 Wewatta Street, Suite 700<br>              Denver, CO  80202<br>Telephone:  (303) 634-4000<br>Facsimile:  (303) 634-4400<br>E-mail:     llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |
| <div align="center">**EXHIBIT E**<br>**TO**<br>**COMPLAINT**</div> ||

# GUARANTY
### (Specific Debt - Limited)

**DATE AND PARTIES.** The date of this Guaranty is June 8, 2007. The parties and their addresses are:

**LENDER:**
> NEW FRONTIER BANK
> 2425 35th Avenue
> Greeley, Colorado 80634
> Telephone: (970) 339-5100

**BORROWER:**
> DENVER STRUCTURES, LLC
> a Delaware Limited Liability Company
> 3220 NEBRASKA AVENUE
> SANTA MONICA, California 90404

**GUARANTOR:**
> HASHEM MIKAIL
> 704 N WALDEN AVENUE
> BEVERLY HILLS, California 90210

**1. DEFINITIONS.** As used in this Guaranty, the terms have the following meanings:

**A. Pronouns.** The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together. "You" and "your" refer to the Lender.

**B. Note.** "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

**C. Property.** "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

**2. SPECIFIC DEBT GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with the Borrower from time to time, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of the following described Debt(s) of the Borrower including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

A promissory note or other agreement, No. 198382-01, dated June 8, 2007, from DENVER STRUCTURES, LLC (Borrower) to you, in the amount of $476,000.00.

My liability will not exceed $476,000.00 of the principal amount outstanding at default, plus accrued interest, attorneys' fees and collection costs, when allowed by law, and all other costs, fees and expenses agreed to be paid under all agreements evidencing the Debt and securing the payment of the Debt. You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

**3. EXTENSIONS.** I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

**4. UNCONDITIONAL LIABILITY.** I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

**5. BANKRUPTCY.** If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims by you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

**6. REVOCATION.** I agree that this is an absolute and unconditional Guaranty. This Guaranty cannot be revoked and will remain in effect until the Debt is paid in full.

**7. PROPERTY.** I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

©1996 Bankers Systems, Inc., St. Cloud, MN Expere  Initials _____

B. Insolvency or Bankruptcy. The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Borrower, or any co-signer, endorser, surety or guarantor of this Guaranty or any Debt.

C. Death or Incompetency. I die or am declared legally incompetent.

D. Failure to Perform. I fail to perform any condition or to keep any promise or covenant of this Guaranty.

E. Other Documents. A default occurs under the terms of any other document relating to the Debt.

F. Other Agreements. I am in default on any other debt or agreement I have with you.

G. Misrepresentation. I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. Judgment. I fail to satisfy or appeal any judgment against me.

I. Forfeiture. The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. Name Change. I change my name or assume an additional name without notifying you before making such a change.

K. Property Transfer. I transfer all or a substantial part of my money or property.

L. Property Value. You determine in good faith that the value of the Property has declined or is impaired.

M. Insecurity. You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason.

9. WAIVERS AND CONSENT. To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. Additional Waivers. In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property.

(4) You, or any institution participating in the Debt, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability. In addition, until the obligations of the Borrower to Lender have been paid in full, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, partner, or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control or a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

C. Waiver of Claims. I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

10. REMEDIES. After the Borrower or I default, you may at your option do any one or more of the following.

A. Acceleration. You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

B. Sources. You may use any and all remedies you have under state or federal law or in any documents relating to the Debt.

C. Insurance Benefits. You may make a claim for any and all insurance benefits or refunds that may be available on default.

D. Payments Made On My Behalf. Amounts advanced on my behalf will be immediately due and may be added to the Secured Debts.

E. Termination. You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

F. Attachment. You may attach or garnish my wages or earnings.

G. Set-Off. You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

H. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**11. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**12. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Guaranty. The execution and delivery of this Guaranty will not violate any agreement governing me or to which I am a party.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

**13. RELIANCE.** I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and I have signed this Guaranty to induce you to extend such credit. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from any loans and financial accommodations resulting in the creation of indebtedness guaranteed hereby.

**14. APPLICABLE LAW.** This Guaranty is governed by the laws of Colorado, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**15. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing and executed by you and me. This Guaranty is the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**16. ASSIGNMENT.** If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

**20. SIGNATURES.** By signing, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR:

HASHEM MIKAIL
Individually



**DISTRICT COURT, JEFFERSON COUNTY, COLORADO**
Court Address:
100 Jefferson County Parkway, Golden, CO 80401

EFILED Document
CO Jefferson County District Court 1st JD
Filing Date: Feb 01 2013 02:02PM MST
Filing ID: 49253142
Review Clerk: Beth B

**Plaintiff:**
2010-1 RADC/CADC VENTURE, LLC

v.

**Defendants:**
KAVEH BRAL and
HASHEM MIKAIL

▲   COURT USE ONLY   ▲

| Attorneys: | Lino S. Lipinsky de Orlov, #13339 |
|---|---|
| | McKenna Long & Aldridge LLP |
| Address: | 1400 Wewatta Street, Suite 700 |
| | Denver, CO  80202 |
| Telephone: | (303) 634-4000 |
| Facsimile: | (303) 634-4400 |
| E-mail: | llipinsky@mckennalong.com |

*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC*

Case Number:

Division:

**EXHIBIT F**
**TO**
**COMPLAINT**

LoanName: DENVER STRUCTURES LLC
AccountNo. 19838201
FDIC Control No. 330300159
Custodian ID No. 330300159
AMONo. 3044.084

## ALLONGE

THIS ALLONGE IS TO BE ATTACHED TO AND MADE AN INTEGRAL PART of the following instrument:

Note (and any amendments, modifications or changes thereto): PROMISSORY NOTE
Dated: June 08, 2007
Payable by: DENVER STRUCTURES LLC
Payable to the Order of: NEW FRONTIER BANK
Original Principal Amount: Four Hundred Seventy-Six Thousand and 00/100 Dollars ($476,000.00)

PAY TO THE ORDER OF 2010-1 RADC/CADC VENTURE, LLC, A DELAWARE LIMITED LIABILITY COMPANY, WITHOUT RECOURSE AND WITHOUT REPRESENTATION OR WARRANTY, EXPRESS, IMPLIED OR BY OPERATION OF LAW, OF ANY KIND AND NATURE WHATSOEVER.

FEDERAL DEPOSIT INSURANCE
CORPORATION IN ITS CAPACITY AS
RECEIVER FOR NEW FRONTIER BANK

By: _____
Name:  Vanessa A. Orta
Title:   Attorney-in-Fact

Dated as of  August 26, 2010

| | |
|---|---|
| **DISTRICT COURT, JEFFERSON COUNTY, COLORADO**<br>Court Address:<br>100 Jefferson County Parkway, Golden, CO 80401 | <span style="color:red">EFILED Document<br>CO Jefferson County District Court 1st JD<br>Filing Date: Feb 01 2013 02:02PM MST<br>Filing ID: 49253142<br>Review Clerk: Beth B</span> |
| **Plaintiff:**<br>2010-1 RADC/CADC VENTURE, LLC<br><br>v.<br><br>**Defendants:**<br>KAVEH BRAL and<br>HASHEM MIKAIL | ▲  **COURT USE ONLY**  ▲ |
| Attorneys:  Lino S. Lipinsky de Orlov, #13339<br>        McKenna Long & Aldridge LLP<br>Address:   1400 Wewatta Street, Suite 700<br>        Denver, CO  80202<br>Telephone:  (303) 634-4000<br>Facsimile:  (303) 634-4400<br>E-mail:    llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |
| **EXHIBIT G<br>TO<br>COMPLAINT** | |

2010105163     11/22/2010 02:19:25 PM
PGS    4       $26.00   DF $0
Electronically Recorded Jefferson County CO
Pam Anderson, Clerk and Recorder     TD1000 N

Prepared by and upon recordation, return to:

Name: VANESSA ORTA, ESQ.
ANDERSON, McCOY & ORTA, P.C.
Address: 100 North Broadway, Suite 2600
Oklahoma City, Oklahoma 73102
405-236-0003
AMO No. 3044.084
Loan Name DENVER STRUCTURES LLC
Custodian ID No. 330300159
Account No. 19838201
FDIC Control No. 330300159

## ASSIGNMENT OF REAL ESTATE DEED OF TRUST

KNOW ALL MEN BY THESE PRESENTS:

THAT, the **FEDERAL DEPOSIT INSURANCE CORPORATION** (acting in any capacity, the "FDIC") **IN ITS CAPACITY AS RECEIVER FOR NEW FRONTIER BANK**, at 550 17th Street, NW, Washington, D.C. 20429-0002 (hereinafter referred to as "Assignor" or "Grantor"), for value received, does by these presents, grant, bargain, sell, assign, transfer and set over to **2010-1 RADC/CADC Venture, LLC, a Delaware limited liability company**, its successors and assigns (hereinafter referred to as "Assignee" or "Grantee"), at 4200 W. 115th Street, Suite 100, Leawood, Kansas 66211, all right, title and interest in and to that certain:

Real Estate DEED OF TRUST executed by Bay Structures LLC, a limited liability company, organized and existing under the laws of Delaware, dated June 08, 2007, in the original principal sum of Four Hundred Seventy-Six Thousand and 00/100 Dollars ($476,000.00) in favor of PUBLIC TRUSTEE OF JEFFERSON COUNTY, COLORADO, Trustee for, and on behalf of, NEW FRONTIER BANK (the "Deed of Trust"), which Deed of Trust was recorded on June 19, 2007, in the Clerk's Office of Jefferson County, State of Colorado ("Clerk's Office"), as Reception Number 2007071091, RERECORDED 9/18/2008 IN RECEPTION # 2008088001;

Any and all other documents and instruments evidencing, securing and or relating to the indebtedness and or obligations secured by the Deed of Trust and any other recorded loan documents identified herein.

The Deed of Trust, as such may have been assigned and modified, covers the following described property, less and except any portion of the property previously released and/or reconveyed:

SEE ATTACHED EXHIBIT A

TO HAVE AND TO HOLD THE SAME UNTO SAID 2010-1 RADC/CADC VENTURE, LLC, ITS SUCCESSORS AND ASSIGNS.

THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WRITTEN OR ORAL, BY THE FDIC IN ITS CAPACITY AS RECEIVER FOR NEW FRONTIER BANK OR IN ITS CORPORATE CAPACITY. THE LOAN IS CONVEYED "AS IS" AND "WITH ALL FAULTS," WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, INCLUDING AS TO COLLECTABILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, BY ANY PERSON, INCLUDING THE FDIC OR ITS OFFICERS EMPLOYEES, AGENTS OR CONTRACTORS.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

IN WITNESS WHEREOF, FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CAPACITY AS RECEIVER FOR NEW FRONTIER BANK has caused this instrument to be executed this 1st day of September, 2010, effective as of the 26th day of August, 2010.

ASSIGNOR:

FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CAPACITY AS RECEIVER FOR NEW FRONTIER BANK

By: _____
Name: J. Michael McCoy
Title:  Attorney-in-Fact

ACKNOWLEDGMENT

STATE OF OKLAHOMA                   )
                                    )   SS:
COUNTY OF OKLAHOMA                  )

On this 1st day of September, 2010, before me personally appeared J. Michael McCoy, as Attorney-in-Fact for the FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CAPACITY AS RECEIVER FOR NEW FRONTIER BANK known to me or proved to me on the basis of satisfactory evidence to be the person who executed the foregoing instrument, and she thereupon duly acknowledged to me that she executed the same to be her free act and deed.

WITNESS my hand and official seal.

My commission expires:          Name of Notary:  Mary Dougherty

**EXHIBIT A**

PARCEL A:

LOT 5, THE MEADOWS AT WESTWOODS SHOPPING CENTER, ACCORDING TO THE PLAT THEREOF RECORDED FEBRUARY 28, 2002 UNDER RECEPTION NO. F1432695, COUNTY OF JEFFERSON, STATE OF COLORADO.

PARCEL B:

THOSE BENEFICIAL EASEMENTS AS SET FORTH IN ARTICLE II OF DECLARATION OF RECIPROCAL EASEMENTS AND RESTRICTIONS RECORDED FEBRUARY 11, 2003 UNDER RECEPTION NO. F1673475.

| | |
|---|---|
| **DISTRICT COURT, JEFFERSON COUNTY, COLORADO**<br>Court Address:<br>100 Jefferson County Parkway, Golden, CO 80401 | EFILED Document<br>CO Jefferson County District Court 1st JD<br>Filing Date: Feb 01 2013 02:02PM MST<br>Filing ID: 49253142<br>Review Clerk: Beth B |
| **Plaintiff:**<br>2010-1 RADC/CADC VENTURE, LLC<br><br>v.<br><br>**Defendants:**<br>KAVEH BRAL and<br>HASHEM MIKAIL | ▲ **COURT USE ONLY** ▲ |
| Attorneys:   Lino S. Lipinsky de Orlov, #13339<br>               McKenna Long & Aldridge LLP<br>Address:     1400 Wewatta Street, Suite 700<br>               Denver, CO  80202<br>Telephone:   (303) 634-4000<br>Facsimile:   (303) 634-4400<br>E-mail:       llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |
| **EXHIBIT H<br>TO<br>COMPLAINT** | |

| | | |
|---|---|---|
| ARVADA STRUCTURES, LLC<br>3220 NEBRASKA AVENUE<br>SANTA MONICA, CA 90404 | NEW FRONTIER BANK<br>2425 35TH AVENUE<br>GREELEY, CO 80634 | Loan Number 185870-01<br>Date 02-28-2007<br>Maturity Date 02-28-2009<br>Loan Amount $ 11,000,000.00<br>Renewal Of |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of ELEVEN MILLION AND NO/100
_____ Dollars $ 11,000,000.00

☐ **Single Advance:** I will receive all of this principal sum on _____. No additional advances are contemplated under this note.

☒ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note on 02-28-2007
_____. I will receive the amount of $3,326,290.65 _____ and future principal advances are contemplated.
Conditions: The conditions for future advances are UPON RECEIPT OF INVOICES AND DRAWS _____
_____
_____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____.

☒ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from _____02-28-2007_____ at the rate of _____8.750 %
per year until 02-28-2009 _____.

☐ **Variable Rate:** This rate may then change as stated below.
   ☐ **Index Rate:** The future rate will be _____ the following index rate: _____
   _____
   _____

   ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
   ☐ **Frequency and Timing:** The rate on this note may change as often as _____
      A change in the interest rate will take effect _____
   ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____% or less than
      _____%. The rate may not change more than _____% each _____

   Effect of Variable Rate: A change in the interest rate will have the following effect on the payments:
   ☐ The amount of each scheduled payment will change.   ☐ The amount of the final payment will change.
   _____

**ACCRUAL METHOD:** Interest will be calculated on a _____ACTUAL/360_____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
   ☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).
   ☒ at a rate equal to 4% OVER THE CONTRACT NOTE RATE

☐ **LATE CHARGE:** If a payment is made more than _____ days after it is due, I agree to pay a late charge of _____.

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount
above: LOAN FEE $15,000.00; TITLE POLICY $8,305.00; TAX CERT $60.00; FLOOD CERT $20.00; RECORDING FEE $37.00 _____

**PAYMENTS:** I agree to pay this note as follows:
QUARTERLY PAYMENTS OF ACCRUED INTEREST CALCULATED ON THE AMOUNT OF CREDIT OUTSTANDING BEGINNING ON 05-28-2007 AND PRINCIPAL DUE ON 02-28-2009.

**ADDITIONAL TERMS:**
SEE ATTACHED EXHIBIT "A"

| | |
|---|---|
| ☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):<br>DEED OF TRUST DATED FEBRUARY 28, 2007<br><br>(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.) | **PURPOSE:** The purpose of this loan is COMMERCIAL: PURCHASE ARVADA SHOPPING CENTER, DEV. COSTS AND CONSTRUCTION<br>**SIGNATURES:** I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.<br>ARVADA STRUCTURES, LLC |

Signature for Lender

_____
TERRY SEELHOFF, VICE PRESIDENT

WALDEN STRUCTURES LLC, MANAGING MEMBER BY  KAVEH BRAL, MANAGER

_____
HASHEM MIKAIL, MANAGER

_____
KAVEH BRAL, MANAGER

UNIVERSAL NOTE  V07.20
Exper̄i  © 1994, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN  3/4/2002

(page 1 of 2)

**DEFINITIONS:** As used on page 1, "☒" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state in which you are located will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe that agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:

(1) any deposit account balance I have with you;

(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and

(3) any repurchase agreement or other overnight obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be ☐ ☐ for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a direct and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to terms of the separate security instrument, by the "Default" "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occurs: fail to make a payment on time or in the amount due; (2) I fail to keep property insured, if required; (3) I fail to pay or keep any promise, or debt or agreement I have with you; (4) any other creditor of mine attempt collect any debt I owe him through court proceedings; (5) I die, am decl incompetent, make an assignment for the benefit of creditors, or becom insolvent (either because my liabilities exceed my assets or I am unabl pay my debts as they become due); (6) I make any written statemen provide any financial information that is untrue or inaccurate at the time it provided; (7) I do or fail to do something which causes you to believe tha will have difficulty collecting the amount I owe you; (8) any collateral sec this note is used in a manner or for a purpose which threatens confiscati a legal authority; (9) I change my name or assume an additional r without first notifying you before making such a change; (10) I fail to cultivate and harvest crops in due season if I am a producer of crops; (11 loan proceeds are used for a purpose that will contribute to excessive er of highly erodible land or to the conversion of wetlands to produc agricultural commodity, as further explained in 7 C.F.R. Part 1940, Sub G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limite the following remedies:

(1) You may demand immediate payment of all I owe you under note (principal, accrued unpaid interest and other accrued char

(2) You may set off this debt against any right I have to the pay of money from you, subject to the terms of the "Set paragraph herein.

(3) You may demand security, additional security, or additional po to be obligated to pay this note as a condition for not taking other remedy.

(4) You may refuse to make advances to me or allow purchase credit by me.

(5) You may use any remedy you have under state or federal law. By selecting any one or more of these remedies you do not give up right to later use any other remedy. By waiving your right to declar event to be a default, you do not waive your right to later conside event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all cos collection, replevin or any other type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to any fee you incur with such attorney plus court costs (except w prohibited by law). To the extent permitted by the United S Bankruptcy Code, I also agree to pay the reasonable attorney's fee costs you incur to collect this debt as awarded by any court exerc jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I wi require you to:

(1) demand payment of amounts due (presentment);

(2) obtain official certification of nonpayment (protest); or

(3) give notice that amounts due have not been paid (notic dishonor).

I waive any defenses I have based on suretyship or impairme collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this even if someone else has also agreed to pay it (by, for example, si this form or a separate guarantee or endorsement). You may su alone, or anyone else who is obligated on this note, or any number together, to collect this note. You may do so without any notice t has not been paid (notice of dishonor). You may without notice re any party to this agreement without releasing any other party. If you up any of your rights, with or without notice, it will not affect my du pay this note. Any extension of new credit to any of us, or renew this note by all or less than all of us will not release me from my d pay it. (Of course, you are entitled to only one payment in full.) I that you may at your option extend this note or the debt represent this note, or any portion of the note or debt, from time to time wi limit or notice and for any term without affecting my liability for pa of the note. I will not assign my obligation under this agreement wi your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request financial statement or information you may deem necessary. I wa that the financial statements and information I provide to you are c be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me sha given by delivering it or by mailing it by first class mail addressed at my last known address. My current address is on page 1. I ag inform you in writing of any change in my address. I will give any r to you by mailing it first class to your address stated on page 1 o agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTERE PAID THROU |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

Experi®  ©1984,1991 Bankers Systems, Inc., St. Cloud, MN  Form UN  3/4/2002

| | |
|---|---|
| **DISTRICT COURT, JEFFERSON COUNTY, COLORADO**<br>Court Address:<br>100 Jefferson County Parkway, Golden, CO 80401 | <span style="color:red">EFILED Document<br>CO Jefferson County District Court 1st JD<br>Filing Date: Feb 01 2013 02:02PM MST<br>Filing ID: 49253142<br>Review Clerk: Beth B</span> |
| **Plaintiff:**<br>2010-1 RADC/CADC VENTURE, LLC<br><br>v.<br><br>**Defendants:**<br>KAVEH BRAL and<br>HASHEM MIKAIL | ▲  **COURT USE ONLY**  ▲ |
| Attorneys:  Lino S. Lipinsky de Orlov, #13339<br> McKenna Long & Aldridge LLP<br>Address:  1400 Wewatta Street, Suite 700<br> Denver, CO  80202<br>Telephone:  (303) 634-4000<br>Facsimile:  (303) 634-4400<br>E-mail:  llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |
| **EXHIBIT I**<br>**TO**<br>**COMPLAINT** | |

$26.00

Return to:
New Frontier Bank
2425 35th Ave.
Greeley, CO  80634

R  $26.00
D  $0.00
TD
2007024318
03/02/2007   04:43:22 PM   5 Page(s)
Jefferson County, Colorado

OL
26.00

15

———— State of Colorado ————                    ——— Space Above This Line For Recording Data ———

# DEED OF TRUST
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is ............... 02-28-2007 ...............
and the parties, their addresses and tax identification numbers, if required, are as follows:

   **GRANTOR:** ARVADA STRUCTURES, LLC, WHOLLY OWNED BY WALDEN STRUCTURES, LLC
   3220 NEBRASKA AVENUE
   SANTA MONICA, CA 90404

   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and acknowledgments.

   **TRUSTEE:** JEFFERSON COUNTY PUBLIC TRUSTEE
   100 JEFFERSON COUNTY PARKWAY
   GOLDEN, CO 80419

   **LENDER:** NEW FRONTIER BANK
   ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF COLORADO
   2425 35TH AVENUE
   GREELEY, CO 80634

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property: SEE ATTACHED EXHIBIT "A"

   The property is located in ........................ JEFFERSON ........................ at 16200 WEST 64TH AVENUE ...............
   ........................................................ (County)
   ........................................................, ........................ ARVADA ........................, Colorado ....... 80007 .......
       (Address)                                    (City)                                          (ZIP Code)

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 11,000,000.00 ................................... . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)* PROMISSORY NOTE #165670-01 DATED DECEMBER 6, 2006 IN THE AMOUNT OF $11,000,000.00 EXECUTED BY ARVADA STRUCTURES, LLC

COLORADO - DEED OF TRUST  (NOT FOR FNMA, FHLMC, FHA OR VA USE)
©1994 Bankers Systems, Inc., St. Cloud, MN  Form RE-DT-CO  10/23/98
                                                                                      *(page 1 of 4)*

B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender executed after this Security Instrument whether or not this Security Instrument is specifically referenced or such future advances or future obligations are incurred for any purpose that was related or unrelated to the purpose of the Security Instrument. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey, and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Grantor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument.

Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument. Grantor agrees that this assignment is effective as to third parties on Grantor's default when Lender takes actual possession of the Property or when Lender commences a foreclosure on the Property or an action or proceeding for an appointment of a receiver or for the sequestration of Rents and this assignment shall remain effective during any redemption period until the Secured Debt is satisfied. Grantor agrees that Lender or Trustee may take actual possession of the property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Grantor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Grantor warrants that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-DT-CO 10/23/98

(page __ of __)

*3*

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Grantor will be in default if any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property or foreclose on installments without acceleration.

If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, reasonable attorneys' fees as permitted by applicable law. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Grantor represents, warrants and agrees that:

  A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

  B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

  C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

  D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-DT-CO 10/23/98

(page 4 of 4)

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of said premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

25. **WAIVERS.** Except to the extent prohibited by law, Grantor waives all rights of appraisement, homestead exemption and marshalling of liens and assets in the Property.

26. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

    ☒ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

    ☒ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

    ☐ **Fixture Filing.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

    ☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
        ☐ Condominium Rider    ☐ Planned Unit Development Rider    ☐ Other ................................
    ☐ **Additional Terms.**

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

ARVADA STRUCTURES, LLC

...............................................................................................................................................
(Signature) WALDEN STRUCTURES LLC, MANAGING MEMBER BY(RAVEH BRAL, MANAGER)  HALSTON MIKAIL, MANAGER     (Date)

ACKNOWLEDGMENT:
STATE OF ...... *Colorado* ......, COUNTY OF ...... *Wells* ...... } ss.
The foregoing instrument was acknowledged before me this ...8... day of ...*February*... 200.7
by ...*RAVEH BRAL, MANAGER AND HALSTON MIKAIL, MANAGER OF WALDEN STRUCTURES, LLC*...
My commission expires:
9/23/2008        *Patrice N. Gutierrez*
                                  (Notary Public)

## EXHIBIT A
### LEGAL DESCRIPTION

Lot 4, Westwoods Shopping Center Filing No. 2, according to the plat recorded June 18, 2003 at Reception No. F1781698, County of Jefferson, State of Colorado;

and

Tract "A", the Meadows at Westwoods Shopping Center, according to the plat recorded February 28, 2002 at Reception No. F1432695, County of Jefferson, State of Colorado;

Together with those easement rights contained in Declaration of Reciprocal Easement and Restrictions recorded February 11, 2003 at Reception No. F1673475, ratified by Ratification of Common Area Maintenance Agreement for Westwoods Shopping Center and ratification of Declaration of Reciprocal Easements and Restrictions recorded March 17, 2003 at Reception No. F1700516 and First Amendment to Declaration of Reciprocal Easements and Restrictions recorded June 23, 2003 at Reception No. F1784807.

Together with perpetual non-exclusive easements for parking as created by Declaration of Reciprocal Parking Easements recorded February 25, 2004 at Reception No. F1969952;

County of Jefferson, State of Colorado.

NOTE: Westwoods Shopping Center, recorded February 28, 2002 at Reception No. F1432695, aka The Meadows at Westwoods Shopping Center.

NOTE: Westwoods Shopping Center Filing No. 2 - Minor Subdivision, recorded June 18, 2003 at Reception No. 1781698, aka Westwoods Shopping Center Filing No. 2.

| | |
|---|---|
| **DISTRICT COURT, JEFFERSON COUNTY, COLORADO**<br>Court Address:<br>100 Jefferson County Parkway, Golden, CO 80401 | EFILED Document<br>CO Jefferson County District Court 1st JD<br>Filing Date: Feb 01 2013 02:02PM MST<br>Filing ID: 49253142<br>Review Clerk: Beth B |
| **Plaintiff:**<br>2010-1 RADC/CADC VENTURE, LLC<br><br>v.<br><br>**Defendants:**<br>KAVEH BRAL and<br>HASHEM MIKAIL | ▲   **COURT USE ONLY**   ▲ |
| Attorneys:   Lino S. Lipinsky de Orlov, #13339<br>           McKenna Long & Aldridge LLP<br>Address:    1400 Wewatta Street, Suite 700<br>           Denver, CO  80202<br>Telephone:  (303) 634-4000<br>Facsimile:  (303) 634-4400<br>E-mail:     llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |
| **EXHIBIT J<br>TO<br>COMPLAINT** | |



## GUARANTY

GREELEY _____ , COLORADO
                    (City)                            (State)

DECEMBER 08, 2006

    For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce NEW FRONTIER BANK _____
(herein, with its participants, successors and assigns, called "Lender"), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of ARVADA STRUCTURES, LLC _____

(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

    A. If this ☒ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following: PROMISSORY NOTE #165670-01 DATED FEBRUARY 28, 2007 _____ and any extensions, renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

    B. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described debt(s): _____

The Undersigned further acknowledges and agrees with Lender that:

    1. No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder.

    2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof. If there be more than one Undersigned, such revocation shall be effective only as to the one so revoking. The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth.

    3. If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured, if the Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, shall be immediately due and payable without demand or notice thereof.

    4. The liability of the Undersigned hereunder shall be limited to a principal amount of $ 11,000,000.00 _____ (if unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount), plus accrued interest thereon and all other costs, fees, and expenses agreed to be paid under all agreements evidencing the Indebtedness and securing the payment of the Indebtedness, and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without effecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is made under this guaranty for such purpose.

    5. The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings.

This guaranty includes the additional provisions on page 2, all of which are made a part hereof.

    This guaranty is ☒ unsecured; ☐ secured by a mortgage or security agreement dated _____ ;
☐ secured by _____

    IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned the day and year first above written.

_____
KAVEH BRAL

_____

_____

_____

"Undersigned" shall refer to all persons who sign this guaranty, severally and jointly.

ADDITIONAL PROVISIONS

6. Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all Indebtedness; (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness; (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any Indebtedness; (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor or other person liable in respect of any Indebtedness; (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security; (viii) any transfer of any Indebtedness or any evidence thereof; (ix) any order of application of any payments or credits upon Indebtedness; (x) any election by the Lender under §1111(b)(2) of the United States Bankruptcy Code.

7. The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction. The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The Undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged.

8. The Undersigned further agrees that the Undersigned shall be and remain obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law. "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not otherwise accrue to Indebtedness due to Borrower's discharge, and the Undersigned shall remain obligated to pay such amounts as though Borrower's obligations had not been discharged.

9. If any payment applied by Lender to Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the Indebtedness to which such payment was applied shall for the purposes of this guaranty be deemed to have continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such Indebtedness as fully as if such application had never been made.

10. Until the obligations of the Borrower to Lender have been paid in full, the Undersigned waives any claim, remedy or other right which the Undersigned may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or performance of the Undersigned's obligation under this guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any right to participate in any claim or remedy the Undersigned may have against the Borrower, collateral, or other party obligated for Borrower's debts, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law.

11. The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.

12. The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

13. This guaranty shall be enforceable against each person signing this guaranty, even if only one person signs and regardless of any failure of other persons to sign this guaranty. If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned. This guaranty shall be effective upon delivery to Lender, without further act, condition or acceptance by Lender, shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns. Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof, and to this end the provisions of this guaranty are declared to be severable. Except as authorized by the terms herein, this guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Undersigned and Lender. This guaranty shall be governed by the laws of the State in which it is executed. The Undersigned waives notice of Lender's acceptance hereof.

| | |
|---|---|
| **DISTRICT COURT, JEFFERSON COUNTY, COLORADO**<br>Court Address:<br>100 Jefferson County Parkway, Golden, CO 80401 | EFILED Document<br>CO Jefferson County District Court 1st JD<br>Filing Date: Feb 01 2013 02:02PM MST<br>Filing ID: 49253142<br>Review Clerk: Beth B |
| **Plaintiff:**<br>2010-1 RADC/CADC VENTURE, LLC<br><br>v.<br><br>**Defendants:**<br>KAVEH BRAL and<br>HASHEM MIKAIL | ▲  **COURT USE ONLY**  ▲ |
| Attorneys:   Lino S. Lipinsky de Orlov, #13339<br>               McKenna Long & Aldridge LLP<br>Address:     1400 Wewatta Street, Suite 700<br>               Denver, CO  80202<br>Telephone:   (303) 634-4000<br>Facsimile:   (303) 634-4400<br>E-mail:      llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |
| **EXHIBIT K**<br>**TO**<br>**COMPLAINT** | |

# GUARANTY

GREELEY _____ , COLORADO _____
        (City)                              (State)

FEBRUARY 28, 2007

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce NEW FRONTIER BANK _____
(herein, with its participants, successors and assigns, called "Lender"), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of ARVADA STRUCTURES LLC _____

(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

A. If this ☒ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following: PROMISSORY NOTE #165670-01 DATED FEBRUARY 28, 2007 _____ and any extensions, renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

B. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described debt(s): _____

The Undersigned further acknowledges and agrees with Lender that:

1. No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder.

2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof. If there be more than one Undersigned, such revocation shall be effective only as to the one so revoking. The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth.

3. If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured. If the Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, shall be immediately due and payable without demand or notice thereof.

4. The liability of the Undersigned hereunder shall be limited to a principal amount of $ 11,000,000.00 _____ (if unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount), plus accrued interest thereon and all other costs, fees, and expenses agreed to be paid under all agreements evidencing the Indebtedness and securing the payment of the Indebtedness, and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, or of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is made under this guaranty for such purpose.

5. The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings.

This guaranty includes the additional provisions on page 2, all of which are made a part hereof.

This guaranty is ☒ unsecured; ☐ secured by a mortgage or security agreement dated _____ ;
☐ secured by _____ .

IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned the day and year first above written.

HALSTON MIKAUL _____

_____

"Undersigned" shall refer to all persons who sign this guaranty, severally and jointly.



# GUARANTY

<u>GREELEY</u>_____, <u>COLORADO</u>_____
     (City)                            (State)

<u>FEBRUARY 28, 2007</u>

    For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce <u>NEW FRONTIER BANK</u>_____ (herein, with its participants, successors and assigns, called "Lender"), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of <u>ARVADA STRUCTURES, LLC</u>_____

(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

A. If this ☒ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following: <u>PROMISSORY NOTE #165670-01 DATED FEBRUARY 28, 2007</u>_____ and any extensions, renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

B. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described debt(s): _____

_____

The Undersigned further acknowledges and agrees with Lender that:

1. No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all Indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder.

2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof. If there be more than one Undersigned, such revocation shall be effective only as to the one so revoking. The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth.

3. If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured. If the Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, shall be immediately due and payable without demand or notice thereof.

4. The liability of the Undersigned hereunder shall be limited to a principal amount of $ <u>11,000,000.00</u>_____ (if unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount), plus accrued interest thereon and all other costs, fees, and expenses agreed to be paid under all agreements evidencing the Indebtedness and securing the payment of the Indebtedness, and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is made under this guaranty for such purpose.

5. The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings.

This guaranty includes the additional provisions on page 2, all of which are made a part hereof.

    This guaranty is ☒ unsecured; ☐ secured by a mortgage or security agreement dated _____ ; ☐ secured by _____

    IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned the day and year first above written.

<u>HASHEM MIKAIL</u>_____

_____

_____

                                "Undersigned" shall refer to all persons who sign this guaranty, severally and jointly.

ADDITIONAL PROVISIONS

6. Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all Indebtedness; (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness; (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any Indebtedness; (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor or other person liable in respect of any Indebtedness; (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security; (viii) any transfer of any Indebtedness or any evidence thereof; (ix) any order of application of any payments or credits upon Indebtedness; (x) any election by the Lender under §1111(b)(2) of the United States Bankruptcy Code.

7. The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction. The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The Undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged.

8. The Undersigned further agrees that the Undersigned shall be and remain obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law. "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not otherwise accrue to Indebtedness due to Borrower's discharge, and the Undersigned shall remain obligated to pay such amounts as though Borrower's obligations had not been discharged.

9. If any payment applied by Lender to Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the Indebtedness to which such payment was applied shall for the purposes of this guaranty be deemed to have continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such Indebtedness as fully as if such application had never been made.

10. Until the obligations of the Borrower to Lender have been paid in full, the Undersigned waives any claim, remedy or other right which the Undersigned may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or performance of the Undersigned's obligation under this guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any right to participate in any claim or remedy the Undersigned may have against the Borrower, collateral, or other party obligated for Borrower's debts, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law.

11. The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.

12. The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

13. This guaranty shall be enforceable against each person signing this guaranty, even if only one person signs and regardless of any failure of other persons to sign this guaranty. If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned. This guaranty shall be effective upon delivery to Lender, without further act, condition or acceptance by Lender, shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns. Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof, and to this end the provisions of this guaranty are declared to be severable. Except as authorized by the terms herein, this guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Undersigned and Lender. This guaranty shall be governed by the laws of the State in which it is executed. The Undersigned waives notice of Lender's acceptance hereof.

| | |
|---|---|
| **DISTRICT COURT, JEFFERSON COUNTY, COLORADO**<br>Court Address:<br>100 Jefferson County Parkway, Golden, CO 80401 | EFILED Document<br>CO Jefferson County District Court 1st JD<br>Filing Date: Feb 01 2013 02:02PM MST<br>Filing ID: 49253142<br>Review Clerk: Beth B |
| **Plaintiff:**<br>2010-1 RADC/CADC VENTURE, LLC<br><br>v.<br><br>**Defendants:**<br>KAVEH BRAL and<br>HASHEM MIKAIL | ▲  **COURT USE ONLY**  ▲ |
| Attorneys:   Lino S. Lipinsky de Orlov, #13339<br>McKenna Long & Aldridge LLP<br>Address:   1400 Wewatta Street, Suite 700<br>Denver, CO  80202<br>Telephone:   (303) 634-4000<br>Facsimile:   (303) 634-4400<br>E-mail:   llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |
| **EXHIBIT L**<br>**TO**<br>**COMPLAINT** | |

FileName: ARVADA STRUCTURES, LLC
AccountNo. 16567001
FDIC Control No. 330300106
Custodian ID No. None
AMONo. 3044.081

## ALLONGE

THIS ALLONGE IS TO BE ATTACHED TO AND MADE AN INTEGRAL PART of the following instrument:

Note (and any amendments, modifications or changes thereto): Promissory Note
Dated: February 28, 2007
Payable by: ARVADA STRUCTURES, LLC
Payable to the Order of: NEW FRONTIER BANK
Original Principal Amount: Eleven Million and 00/100 Dollars ($11,000,000.00)

PAY TO THE ORDER OF 2010-1 RADC/CADC VENTURE, LLC, A DELAWARE LIMITED LIABILITY COMPANY, WITHOUT RECOURSE AND WITHOUT REPRESENTATION OR WARRANTY, EXPRESS, IMPLIED OR BY OPERATION OF LAW, OF ANY KIND AND NATURE WHATSOEVER.

FEDERAL DEPOSIT INSURANCE
CORPORATION IN ITS CAPACITY AS
RECEIVER FOR NEW FRONTIER BANK
By: _____
Name:  Vanessa A. Orta
Title:  Attorney-in-Fact

Dated as of  August 26, 2010

| | |
|---|---|
| **DISTRICT COURT, JEFFERSON COUNTY, COLORADO**<br>Court Address:<br>100 Jefferson County Parkway, Golden, CO 80401 | EFILED Document<br>CO Jefferson County District Court 1st JD<br>Filing Date: Feb 01 2013 02:02PM MST<br>Filing ID: 49253142<br>Review Clerk: Beth B |
| **Plaintiff:**<br>2010-1 RADC/CADC VENTURE, LLC<br><br>v.<br><br>**Defendants:**<br>KAVEH BRAL and<br>HASHEM MIKAIL | ▲ **COURT USE ONLY** ▲ |
| Attorneys:  Lino S. Lipinsky de Orlov, #13339<br>              McKenna Long & Aldridge LLP<br>Address:    1400 Wewatta Street, Suite 700<br>              Denver, CO  80202<br>Telephone:  (303) 634-4000<br>Facsimile:   (303) 634-4400<br>E-mail:      llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |
| **EXHIBIT M<br>TO<br>COMPLAINT** | |

2010091985    10/15/2010 03:09:42 PM
PGS   4    $26.00   DF $0
Electronically Recorded Jefferson County CO
Pam Anderson, Clerk and Recorder    TD1000 N

Prepared by and upon recordation, return to:

Name: VANESSA ORTA, ESQ.
ANDERSON, McCOY & ORTA, P.C.
Address: 100 North Broadway, Suite 2600
Oklahoma City, Oklahoma 73102
405-236-0003
AMO No. 3044.081
Custodian ID No. None
Account No. 16567001
FDIC Control No. 330300106

**Tax Map No. or Tax Parcel Identification No.: 30-121-06-018, 30-121-06-026, 30-122-01-035, 30-122-01-036**

## ASSIGNMENT OF REAL ESTATE DEED OF TRUST

KNOW ALL MEN BY THESE PRESENTS:

THAT, the **FEDERAL DEPOSIT INSURANCE CORPORATION** (acting in any capacity, the "FDIC") **IN ITS CAPACITY AS RECEIVER FOR NEW FRONTIER BANK**, at 550 17th Street, NW, Washington, D.C. 20429-0002 (hereinafter referred to as "Assignor" or "Grantor"), for value received, does by these presents, grant, bargain, sell, assign, transfer and set over to **2010-1 RADC/CADC Venture, LLC, a Delaware limited liability company**, its successors and assigns (hereinafter referred to as "Assignee" or "Grantee"), at 4200 W. 115th Street, Suite 100, Leawood, Kansas 66211, all right, title and interest in and to that certain:

Real Estate Deed of Trust executed by Arvada Structures, LLC, wholly owned by Walden Structures, LLC, dated February 28, 2007, in the original principal sum of Eleven Million and 00/100 Dollars ($11,000,000.00) of Deed of Trust in favor of Jefferson County Public Trustee, Trustee for, and on behalf of, NEW FRONTIER BANK (the "Deed of Trust"), which Deed of Trust was recorded on March 02, 2007, in the Clerk's Office of Jefferson County, State of Colorado ("Clerk's Office"), as Instrument Number 2007024318;

Any and all other documents and instruments evidencing, securing and or relating to the indebtedness and or obligations secured by the Deed of Trust and any other recorded loan documents identified herein.

The Deed of Trust, as such may have been assigned and modified, covers the following described property, less and except any portion of the property previously released and/or reconveyed:

SEE ATTACHED EXHIBIT A

TO HAVE AND TO HOLD THE SAME UNTO SAID 2010-1 RADC/CADC VENTURE, LLC, ITS SUCCESSORS AND ASSIGNS.

THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WRITTEN OR ORAL, BY THE FDIC IN ITS CAPACITY AS RECEIVER FOR NEW FRONTIER BANK OR IN ITS CORPORATE CAPACITY. THE LOAN IS CONVEYED "AS IS" AND "WITH ALL FAULTS," WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, INCLUDING AS TO COLLECTABILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, BY ANY PERSON, INCLUDING THE FDIC OR ITS OFFICERS EMPLOYEES, AGENTS OR CONTRACTORS.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CAPACITY AS RECEIVER FOR NEW FRONTIER BANK has caused this instrument to be executed this 1st day of September, 2010, effective as of the 26th day of August, 2010.

ASSIGNOR:

FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CAPACITY AS RECEIVER FOR NEW FRONTIER BANK

By: _____
Name: J. Michael McCoy
Title: Attorney-in-Fact

## ACKNOWLEDGMENT

STATE OF OKLAHOMA.                    )
                                      )    SS:
COUNTY OF OKLAHOMA                    )

On this 1st day of September, 2010, before me personally appeared J. Michael McCoy, as Attorney-in-Fact for the FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CAPACITY AS RECEIVER FOR NEW FRONTIER BANK known to me or proved to me on the basis of satisfactory evidence to be the person who executed the foregoing instrument, and she thereupon duly acknowledged to me that she executed the same to be her free act and deed.

WITNESS my hand and official seal.

My commission expires: _____

Name of Notary:  Mary Dougherty

MARY E. DOUGHERTY
NOTARY
# 00004063
EXP 04/17/12
PUBLIC
STATE OF OKLAHOMA

# EXHIBIT A

Lot 4, Westwoods Shopping Center Filing No. 2, according to the plat recorded June 18, 2003 at Reception No. F1781698, County of Jefferson, State of Colorado;

and

Tract "A", the Meadows at Westwoods Shopping Center, according to the plat recorded February 28, 2002 at Reception No. F1432695, County of Jefferson, State of Colorado;

Together with those easement rights contained in Declaration of Reciprocal Easement and Restrictions recorded February 11, 2003 at Reception No. F1673475, ratified by Ratification of Common Area Maintenance Agreement for Westwoods Shopping Center and ratification of Declaration of Reciprocal Easements and Restrictions recorded March 17, 2003 at Reception No. F1760516 and First Amendment to Declaration of Reciprocal Easements and Restrictions recorded June 23, 2003 at Reception No. F1784897.

Together with perpetual non-exclusive easements for parking as created by Declaration of Reciprocal Parking Easements recorded February 25, 2004 at Reception No. F1969957;

County of Jefferson, State of Colorado.

NOTE: Westwoods Shopping Center, recorded February 28, 2002 at Reception No. F1432695, aka The Meadows at Westwoods Shopping Center.

NOTE: Westwoods Shopping Center Filing No. 2 – Minor Subdivision, recorded June 18, 2003 at Reception No. 1781698, aka Westwoods Shopping Center Filing No. 2.

| | |
|---|---|
| **DISTRICT COURT, JEFFERSON COUNTY, COLORADO**<br>Court Address:<br>100 Jefferson County Parkway, Golden, CO 80401 | <span style="color:red">EFILED Document<br>CO Jefferson County District Court 1st JD<br>Filing Date: Feb 01 2013 02:02PM MST<br>Filing ID: 49253142<br>Review Clerk: Beth B</span> |
| **Plaintiff:**<br>2010-1 RADC/CADC VENTURE, LLC<br><br>v.<br><br>**Defendants:**<br>KAVEH BRAL and<br>HASHEM MIKAIL | ▲ **COURT USE ONLY** ▲ |
| Attorneys:   Lino S. Lipinsky de Orlov, #13339<br>            McKenna Long & Aldridge LLP<br>Address:     1400 Wewatta Street, Suite 700<br>            Denver, CO  80202<br>Telephone:   (303) 634-4000<br>Facsimile:   (303) 634-4400<br>E-mail:      llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |
| **EXHIBIT N<br>TO<br>COMPLAINT** | |

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 165670-02 | ARVADA STRUCTURES, LLC | | 09/20/07 | TFS |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $3,000,000.00 | Not Applicable | 8.750% | 02/28/09 | Commercial |
| | | Creditor Use Only | | |

## PROMISSORY NOTE
(Commercial - Draw)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is September 20, 2007. The parties and their addresses are:

LENDER:
NEW FRONTIER BANK
2425 35th Avenue
Greeley, Colorado 80634
Telephone: (970) 339-5100

BORROWER:
ARVADA STRUCTURES, LLC
a California Limited Liability Company
3220 NEBRASKA AVENUE
SANTA MONICA, California 90404

1. **DEFINITIONS.** As used in this Note, the terms have the following meanings:

A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.

B. **Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

D. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

E. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

F. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

2. **PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, amounts advanced from time to time under the terms of this Note up to the maximum total principal balance of $3,000,000.00 (Principal) plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note matures or this obligation is accelerated.

All advances made will be made subject to the terms of a separate construction loan agreement and all other terms and conditions of the Loan.

3. **INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 8.750 percent (Interest Rate).

A. **Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time, plus an additional 4.000 percent, until paid in full.

B. **Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

C. **Accrual.** Interest accrues using an Actual/360 days counting method.

4. **ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

A. **Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.

Title Insurance. A(n) Title Insurance fee of $2,810.00 payable from separate funds on or before today's date.
Recording - Mortgage. A(n) Recording - Mortgage fee of $42.00 payable from separate funds on or before today's date.
Loan Origination. A(n) Loan Origination fee of $15,000.00 payable from separate funds on or before today's date.
Flood Determination. A(n) Flood Determination fee of $20.00 payable from separate funds on or before today's date.
Appraisal. A(n) Appraisal fee of $5,000.00 payable from separate funds on or before today's date.

5. **PAYMENT.** I agree to pay this Note in installments of accrued interest beginning November 28, 2007, and then on the same day in each 3rd month thereafter. I agree to pay the entire unpaid Principal and any accrued but unpaid interest on February 28, 2009.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to any charges that I owe other than principal and interest then to interest that is due, and finally to principal that is due. If you and I agree to a different application of payments, we will describe our agreement on this Note. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

6. **PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

7. **LOAN PURPOSE.** The purpose of this Loan is FOR ADDITIONAL FUNDS TO COMPLETE WESTWOODS SHOPPING CENTER.

8. ADDITIONAL TERMS. WAIVER OF JURY TRIAL. To the fullest extent permitted by law, the parties hereto waive the right to a trial by jury in any action brought under or in any way related to this Agreement.

CREDIT INFORMATION. I agree and authorize you to obtain credit information about me from time to time (for example, by requesting a credit report) and to report to others your credit experience with me (such as a credit reporting agency). I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

9. SECURITY. The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document |
|---|---|
| Deed Of Trust - 15200 WEST 64TH AVENUE | ARVADA STRUCTURES, LLC |

10. DEFAULT. I will be in default if any of the following occur:

A. Payments. I fail to make a payment in full when due.

B. Insolvency or Bankruptcy. The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Note or any other obligations I have with you.

C. Business Termination. I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

D. Failure to Perform. I fail to perform any condition or to keep any promise or covenant of this Note.

E. Other Documents. A default occurs under the terms of any other Loan Document.

F. Other Agreements. I am in default on any other debt or agreement I have with you.

G. Misrepresentation. I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. Judgment. I fail to satisfy or appeal any judgment against me.

I. Forfeiture. The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. Name Change. I change my name or assume an additional name without notifying you before making such a change.

K. Property Transfer. I transfer all or a substantial part of my money or property.

L. Property Value. You determine in good faith that the value of the Property has declined or is impaired.

M. Material Change. Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

N. Insecurity. You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Note or that the prospect for payment or performance of the Loan is impaired for any reason.

11. DUE ON SALE OR ENCUMBRANCE. You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

12. WAIVERS AND CONSENT. To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. Additional Waivers By Borrower. In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

13. REMEDIES. After I default, you may at your option do any one or more of the following.

A. Acceleration. You may make all or any part of the amount owing by the terms of this Note immediately due.

B. Sources. You may use any and all remedies you have under state or federal law or in any Loan Document.

C. Insurance Benefits. You may make a claim for any and all insurance benefits or refunds that may be available on my default.

D. Payments Made On My Behalf. Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate.

E. Termination. You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

F. Set-Off. You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

G. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**14. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note or any other Loan Document. Expenses include, but are not limited to, reasonable attorneys' fees after default and referral to an attorney not your salaried employee, court costs, and other collection costs. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Note. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**15. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**16. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Note is in effect:

A. Power. I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

B. Authority. The execution, delivery and performance of this Note and the obligation evidenced by this Note are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my Property is subject.

C. Name and Place of Business. Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**17. INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.

A. Property Insurance. I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing the Loan.

B. Flood Insurance. Flood insurance is not required at this time. It may be required in the future should the property be included in an updated flood plain map. If required in the future, I may obtain flood insurance from anyone I want that is reasonably acceptable to you.

C. Insurance Warranties. I agree to purchase any insurance coverages that are required, in the amounts you require, as described in this or any other documents I sign for the Loan. I will provide you with continuing proof of coverage. I will buy or provide insurance from a firm licensed to do business in the State where the Property is located. If I buy or provide the insurance from someone other than you, the firm will be reasonably acceptable to you. I will have the insurance company name you as loss payee on any insurance policy. You will apply the insurance proceeds toward what I owe you on the outstanding balance. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will keep the insurance until all debts secured by this agreement are paid. If I want to buy the insurance from you, I have signed a separate statement agreeing to this purchase.

**18. APPLICABLE LAW.** This Note is governed by the laws of Colorado, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**19. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**20. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**21. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**22. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**23. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**24. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

25. SIGNATURES.  By signing I agree to the terms contained in this Note.  I also acknowledge receipt of a copy of this Note.

BORROWER:

ARVADA STRUCTURES, LLC

By WALDEN STRUCTURES LLC, MANAGING MEMBER

By_____
HASHEM MIKAIL, MANAGING MEMBER
By_____
KAVEH BRAL, MANAGING MEMBER
By_____
HASHEM MIKAIL, MANAGER
By_____
KAVEH BRAL, MANAGER



**DISTRICT COURT, JEFFERSON COUNTY, COLORADO**
Court Address:
100 Jefferson County Parkway, Golden, CO 80401

EFILED Document
CO Jefferson County District Court 1st JD
Filing Date: Feb 01 2013 02:02PM MST
Filing ID: 49253142
Review Clerk: Beth B

**Plaintiff:**

2010-1 RADC/CADC VENTURE, LLC

v.

**Defendants:**
KAVEH BRAL and
HASHEM MIKAIL

▲  **COURT USE ONLY**  ▲

| | |
|---|---|
| Attorneys:  Lino S. Lipinsky de Orlov, #13339<br>McKenna Long & Aldridge LLP<br>Address:  1400 Wewatta Street, Suite 700<br>Denver, CO  80202<br>Telephone:  (303) 634-4000<br>Facsimile:  (303) 634-4400<br>E-mail:  llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |

**EXHIBIT O**
**TO**
**COMPLAINT**

R $31.00
$0.00
2007111492
10/01/2007  11:36:40 AM  6 Page(s)
Jefferson County, Colorado

Space Above This Line For Recording Data

# DEED OF TRUST
### (With Future Advance Clause)

**DATE AND PARTIES.** The date of this Deed Of Trust (Security Instrument) is SEPTEMBER 20, 2007. The parties and their addresses are:

**GRANTOR:**
    ARVADA STRUCTURES, LLC
    A California Limited Liability Company
    3220 NEBRASKA AVENUE
    SANTA MONICA, California 90404

**TRUSTEE:**
    PUBLIC TRUSTEE OF JEFFERSON COUNTY, COLORADO

**LENDER:**
    NEW FRONTIER BANK
    Organized and existing under the laws of Colorado
    2425 35th Avenue
    Greeley, Colorado 80634

**1. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:

LOT 4, WESTWOODS SHOPPING CENTER FILING NO. 2, ACCORDING TO THE PLAT RECORDED JUNE 18, 2003 AT RECEPTION NO. F1781698, COUNTY OF JEFFERSON, STATE OF COLORADO;

AND

TRACT "A", THE MEADOWS AT WESTWOODS SHOPPING CENTER, ACCORDING TO THE PLAT RECORDED FEBRUARY 28, 2002 AT RECEPTION NO. F1432695, COUNTY OF JEFFERSON, STATE OF COLORADO;

TOGETHER WITH THOSE EASEMENT RIGHTS CONTAINED IN DECLARATION OF RECIPROCAL EASEMENT AND RESTRICTIONS RECORDED FEBRUARY 11, 2003 AT RECEPTION NO. F1673475, RATIFIED BY RATIFICATION OF COMMON AREA MAINTENANCE AGREEMENT FOR WESTWOODS SHOPPING CENTER AND RATIFICATION OF DECLARATION OF RECIPROCAL EASEMENTS AND RESTRICTIONS RECORDED MARCH 17, 2003 AT RECEPTION NO. F1700516 AND FIRST AMENDMENT TO DECLARATION OF RECIPROCAL EASEMENTS AND RESTRICTIONS RECORDED JUNE 23, 2003 AT RECEPTION NO. F1784807.

TOGETHER WITH PERPETUAL NON-EXCLUSIVE EASEMENTS FOR PARKING AS CREATED BY DECLARATION OF RECIPROCAL PARKING EASEMENTS RECORDED FEBRUARY 25, 2004 AT RECEPTION NO. F1969952;

COUNTY OF JEFFERSON, STATE OF COLORADO.

The property is located in JEFFERSON County at 15200 WEST 64TH AVENUE, ARVADA, Colorado 80007. Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, all water and riparian rights, wells, ditches, reservoirs and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**2. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time will not exceed $3,000,000.00. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**3. SECURED DEBTS.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

    **A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 165670-02, dated September 20, 2007, from Grantor to Lender, with a loan amount of $3,000,000.00. One or more of the debts secured by this Security Instrument contains a future advance provision.

    **B. All Debts.** All present and future debts from Grantor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Grantor's principal dwelling that is created by this Security Instrument.

ARVADA STRUCTURES, LLC
Colorado Deed Of Trust
CO/4XXb85llu0000590000558602092007Y

STEWART TITLE ms., Inc., St. Cloud, MN Exberts
Longmont 2007 00449

RESCANNED DATE 10-28-2022

"RECEIVED IN THIS CONDITION"

This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities.

C. Sums Advanced. All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

4. PAYMENTS. Grantor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

5. WARRANTY OF TITLE. Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

6. PRIOR SECURITY INTERESTS. With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Grantor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

7. CLAIMS AGAINST TITLE. Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

8. DUE ON SALE OR ENCUMBRANCE. Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

9. TRANSFER OF AN INTEREST IN THE GRANTOR. If Grantor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if:

A. A beneficial interest in Grantor is sold or transferred.

B. There is a change in either the identity or number of members of a partnership or similar entity.

C. There is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity.

However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Security Instrument.

10. WARRANTIES AND REPRESENTATIONS. Grantor makes to Lender the following warranties and representations which will continue as long as this Security Instrument is in effect:

A. Power. Grantor is duly organized, and validly existing and in good standing in all jurisdictions in which Grantor operates. Grantor has the power and authority to enter into this transaction and to carry on Grantor's business or activity as it is now being conducted and, as applicable, is qualified to do so in each jurisdiction in which Grantor operates.

B. Authority. The execution, delivery and performance of this Security Instrument and the obligation evidenced by this Security Instrument are within Grantor's powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which Grantor is a party or to which Grantor is or any of Grantor's property is subject.

C. Name and Place of Business. Other than previously disclosed in writing to Lender, Grantor has not changed Grantor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name. Without Lender's prior written consent, Grantor does not and will not use any other name and will preserve Grantor's existing name, trade names and franchises.

11. PROPERTY CONDITION, ALTERATIONS AND INSPECTION. Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor will not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Grantor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Grantor will not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender will give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property will be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

ARVADA STRUCTURES, LLC
Colorado Deed Of Trust
CO/4XX95i\u00005900005586022092007Y                    ©1996 Bankers Systems, Inc., St. Cloud, MN ☒☒☒☒                    Initials ___
Page 2



**12. AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**13. ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably assigns, grants, conveys to Lender as additional security all the right, title and interest in the following (Property).

**A.** Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to any extensions, renewals, modifications or replacements (Leases).

**B.** Rents, issues and profits, including but not limited to security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Grantor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Grantor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default. Grantor will not collect in advance any Rents due in future lease periods, unless Grantor first obtains Lender's written consent. Upon default, Grantor will receive any Rents in trust for Lender and Grantor will not commingle the Rents with any other funds. When Lender so directs, Grantor will endorse and deliver any payments of Rents from the Property to Lender. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Grantor agrees that this Security Instrument is immediately effective between Grantor and Lender. This Security Instrument will remain effective during any statutory redemption period until the Secured Debts are satisfied. Unless otherwise prohibited or prescribed by state law, Grantor agrees that Lender may take actual possession of the Property without the necessity of commencing any legal action or proceeding. Grantor agrees that actual possession of the Property is deemed to occur when Lender notifies Grantor of Grantor's default and demands that Grantor and Grantor's tenants pay all Rents due or to become due directly to Lender. Immediately after Lender gives Grantor the notice of default, Grantor agrees that either Lender or Grantor may immediately notify the tenants and demand that all future Rents be paid directly to Lender. As long as this Assignment is in effect, Grantor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Grantor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Grantor or any party to the Lease defaults or fails to observe any applicable law, Grantor will promptly notify Lender. If Grantor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance. Grantor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Grantor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Grantor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

**14. DEFAULT.** Grantor will be in default if any of the following occur:

**A. Payments.** Grantor fails to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against Grantor, Borrower, or any co-signer, endorser, surety or guarantor of this Security Instrument or any other obligations Borrower has with Lender.

**C. Business Termination.** Grantor merges, dissolves, reorganizes, ends its business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D. Failure to Perform.** Grantor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

**E. Other Documents.** A default occurs under the terms of any other document relating to the Secured Debts.

**F. Other Agreements.** Grantor is in default on any other debt or agreement Grantor has with Lender.

**G. Misrepresentation.** Grantor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** Grantor fails to satisfy or appeal any judgment against Grantor.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

©1996 Bankers Systems, Inc., St. Cloud, MN

**J. Name Change.** Grantor changes Grantor's name or assumes an additional name without notifying Lender before making such a change.

**K. Property Transfer.** Grantor transfers all or a substantial part of Grantor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section.

**L. Property Value.** Lender determines in good faith that the value of the Property has declined or is impaired.

**M. Material Change.** Without first notifying Lender, there is a material change in Grantor's business, including ownership, management, and financial conditions.

**N. Insecurity.** Lender determines in good faith that a material adverse change has occurred in Grantor's financial condition from the conditions set forth in Grantor's most recent financial statement before the date of this Security Instrument or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**15. REMEDIES.** On or after default, Lender may use any and all remedies Lender has under state or federal law or in any document relating to the Secured Debts, including, without limitation, the power to sell the Property or foreclose on installments without acceleration. Any amounts advanced on Grantor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Grantor's default.

Subject to any right to cure, required time schedules or any other notice rights Grantor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of Grantor's default or anytime thereafter.

If there is a default, Trustee will, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash. Trustee will give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon the sale of the Property, to the extent not prohibited by law, and at such time purchaser is legally entitled to it, Trustee shall make and deliver a deed to the Property sold which conveys title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all monies advanced for repairs, taxes, insurance liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to persons legally entitled to it. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**16. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, Grantor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Security Instrument or any other document relating to the Secured Debts. Grantor agrees to pay expenses for Lender to inspect and preserve the Property and for any recordation costs of releasing the Property from this Security Instrument. Expenses include, but are not limited to, reasonable attorneys' fees after default and referral to an attorney who is not a salaried employee of the Lender, court costs, and other collection costs. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts. In addition, to the extent permitted by the United States Bankruptcy Code, Grantor agrees to pay the reasonable attorneys' fees incurred by Lender to protect Lender's rights and interests in connection with any bankruptcy proceedings initiated by or against Grantor.

**17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Grantor represents, warrants and agrees that:

**A.** Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

**B.** Except as previously disclosed and acknowledged in writing to Lender, Grantor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

**C.** Grantor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Grantor will take all necessary remedial action in accordance with Environmental Law.

**D.** Except as previously disclosed and acknowledged in writing to Lender, Grantor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to

(1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Grantor or any tenant of any Environmental Law. Grantor will immediately notify Lender in writing as soon as Grantor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.

F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Grantor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Grantor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Grantor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Grantor agrees, at Grantor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Grantor's obligations under this section at Grantor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Grantor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Grantor will provide Lender with collateral of at least equal value to the Property without prejudice to any of Lender's rights under this Security Instrument.

L. Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

18. CONDEMNATION. Grantor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. INSURANCE. Grantor agrees to keep the Property insured against the risks reasonably associated with the Property. Grantor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts. Grantor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld.

All insurance policies and renewals will include a standard "mortgage clause" and, where applicable, "loss payee clause." If required by Lender, Grantor agrees to maintain comprehensive general liability insurance and rental loss or business interruption insurance in amounts and under policies acceptable to Lender. The comprehensive general liability insurance must name Lender as an additional insured. The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing).

Grantor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Grantor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Grantor will immediately notify Lender of cancellation or termination of insurance. If Grantor fails to keep the Property insured, Lender may obtain insurance to protect Lender's interest in the Property and Grantor will pay for the insurance on Lender's demand. Lender may demand that Grantor pay for the insurance all at once, or Lender may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include coverages not originally required of Grantor, may be written by a company other than one Grantor would choose, and may be written at a higher rate than Grantor could obtain if Grantor purchased the insurance. Grantor acknowledges and agrees that Lender or one of Lender's affiliates may receive commissions on the purchase of this insurance.

20. ESCROW FOR TAXES AND INSURANCE. Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. CO-SIGNERS. If Grantor signs this Security Instrument but is not otherwise obligated to pay the Secured Debts, Grantor does so only to convey Grantor's interest in the Property to secure payment of the Secured Debts and Grantor does not agree by signing this Security Instrument to be personally liable on the Secured

Debts. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws.

22. WAIVERS. Except to the extent prohibited by law, Grantor waives all appraisement and homestead exemption rights relating to the Property.

23. CONSTRUCTION LOAN. This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

24. APPLICABLE LAW. This Security Instrument is governed by the laws of Colorado, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

25. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS. Each Grantor's obligations under this Security Instrument are independent of the obligations of any other Grantor. Lender may sue each Grantor individually or together with any other Grantor. Lender may release any part of the Property and Grantor will still be obligated under this Security Instrument for the remaining Property. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Grantor.

26. AMENDMENT, INTEGRATION AND SEVERABILITY. This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Grantor and Lender. This Security Instrument and any other documents relating to the Secured Debts are the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

27. INTERPRETATION. Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

28. NOTICE, FINANCIAL REPORTS, ADDITIONAL DOCUMENTS AND RECORDING TAXES. Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Grantor will be deemed to be notice to all Grantors. Grantor will inform Lender in writing of any change in Grantor's name, address or other application information. Grantor will provide Lender any financial statements or information Lender requests. All financial statements and information Grantor gives Lender will be correct and complete. Grantor agrees to pay all expenses, charges and taxes in connection with the preparation and recording of this Security Instrument. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and to confirm Lender's lien status on any Property, and Grantor agrees to pay all expenses, charges and taxes in connection with the preparation and recording thereof. Time is of the essence.

SIGNATURES. By signing, Grantor agrees to the terms and covenants contained in this Security Instrument. Grantor also acknowledges receipt of a copy of this Security Instrument.

GRANTOR:
ARVADA STRUCTURES, LLC
  By WALDEN STRUCTURES LLC, MANAGING MEMBER
    By
    HASHEM MIKAIL, MANAGING MEMBER
    By
    KAVEH BRAL, MANAGING MEMBER
  By
  HASHEM MIKAIL, MANAGER
  By
  KAVEH BRAL/MANAGER

ACKNOWLEDGMENT.
State OF California, County OF Los Angeles SS.
THIS INSTRUMENT WAS ACKNOWLEDGED BEFORE ME THIS 21st DAY
OF Sept , 2007 BY ARVADA STRUCTURES, LLC BY WALDEN STRUCTURES LLC, MANAGING MEMBER BY HASHEM MIKAIL, MANAGING MEMBER AND KAVEH BRAL, MANAGING MEMBER, AND BY HASHEM MIKAIL, MANAGER, AND KAVEH BRAHL, MANAGER.

MY COMMISSION EXPIRES: 7-19-2011
(NOTARY PUBLIC)

SHEILA TRIVEDI
Commission # 1752805
Notary Public - California
Los Angeles County
My Comm. Expires Jul 19, 2011

AFTER RECORDING PLEASE RETURN TO: 
NEW FRONTIER BANK 2406 35th AVE. GREELEY, CO 80634

| | |
|---|---|
| **DISTRICT COURT, JEFFERSON COUNTY, COLORADO**<br>Court Address:<br>100 Jefferson County Parkway, Golden, CO 80401 | EFILED Document<br>CO Jefferson County District Court 1st JD<br>Filing Date: Feb 01 2013 02:02PM MST<br>Filing ID: 49253142<br>Review Clerk: Beth B |
| **Plaintiff:**<br>2010-1 RADC/CADC VENTURE, LLC<br><br>v.<br><br>**Defendants:**<br>KAVEH BRAL and<br>HASHEM MIKAIL | ▲  **COURT USE ONLY**  ▲ |
| Attorneys:   Lino S. Lipinsky de Orlov, #13339<br>                    McKenna Long & Aldridge LLP<br>Address:    1400 Wewatta Street, Suite 700<br>                    Denver, CO  80202<br>Telephone:  (303) 634-4000<br>Facsimile:   (303) 634-4400<br>E-mail:       llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |
| **EXHIBIT P**<br>**TO**<br>**COMPLAINT** | |

# GUARANTY
### (Specific Debt - Limited)

**DATE AND PARTIES.** The date of this Guaranty is September 20, 2007. The parties and their addresses are:

**LENDER:**
  NEW FRONTIER BANK
  2425 35th Avenue
  Greeley, Colorado 80634
  Telephone: (970) 339-5100

**BORROWER:**
  ARVADA STRUCTURES, LLC
  a California Limited Liability Company
  3220 NEBRASKA AVENUE
  SANTA MONICA, California 90404

**GUARANTOR:**
  KAVEH BRAL
  13030 EVANSTON STREET
  LOS ANGELES, California 90049

**1. DEFINITIONS.** As used in this Guaranty, the terms have the following meanings:

  **A. Pronouns.** The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together. "You" and "your" refer to the Lender.

  **B. Note.** "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

  **C. Property.** "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

**2. SPECIFIC DEBT GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with the Borrower from time to time, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of the following described Debt(s) of the Borrower including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

A promissory note or other agreement, No. 165670-02, dated September 20, 2007, from ARVADA STRUCTURES, LLC (Borrower) to you, in the amount of $3,000,000.00.

My liability will not exceed $3,000,000.00 of the principal amount outstanding at default, plus accrued interest, attorneys' fees and collection costs, when allowed by law, and all other costs, fees and expenses agreed to be paid under all agreements evidencing the Debt and securing the payment of the Debt. You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

**3. EXTENSIONS.** I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

**4. UNCONDITIONAL LIABILITY.** I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

**5. BANKRUPTCY.** If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims by you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

**6. REVOCATION.** I agree that this is an absolute and unconditional Guaranty. This Guaranty cannot be revoked and will remain in effect until the Debt is paid in full.

**7. PROPERTY.** I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following occur:

  **A. Payments.** I fail to make a payment in full when due.

B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Borrower, or any co-signer, endorser, surety or guarantor of this Guaranty or any Debt.

C. **Death or Incompetency.** I die or am declared legally incompetent.

D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Guaranty.

E. **Other Documents.** A default occurs under the terms of any other document relating to the Debt.

F. **Other Agreements.** I am in default on any other debt or agreement I have with you.

G. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. **Judgment.** I fail to satisfy or appeal any judgment against me.

I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. **Name Change.** I change my name or assume an additional name without notifying you before making such a change.

K. **Property Transfer.** I transfer all or a substantial part of my money or property.

L. **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

M. **Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason.

9. **WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. **Additional Waivers.** In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property.

(4) You, or any institution participating in the Debt, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability. In addition, until the obligations of the Borrower to Lender have been paid in full, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, partner, or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control or a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

B. **No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

C. **Waiver of Claims.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

10. **REMEDIES.** After the Borrower or I default, you may at your option do any one or more of the following.

A. **Acceleration.** You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

B. **Sources.** You may use any and all remedies you have under state or federal law or in any documents relating to the Debt.

C. **Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on default.

D. **Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the Secured Debts.

E. **Termination.** You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

F. **Attachment.** You may attach or garnish my wages or earnings.

G. **Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

H. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**11. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**12. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Guaranty. The execution and delivery of this Guaranty will not violate any agreement governing me or to which I am a party.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

**13. RELIANCE.** I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and I have signed this Guaranty to induce you to extend such credit. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from any loans and financial accommodations resulting in the creation of indebtedness guarantied hereby.

**14. APPLICABLE LAW.** This Guaranty is governed by the laws of Colorado, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**15. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing and executed by you and me. This Guaranty is the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**16. ASSIGNMENT.** If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

**20. SIGNATURES.** By signing, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR:

_____
KAVEH BRAL
Individually



**DISTRICT COURT, JEFFERSON COUNTY, COLORADO**
Court Address:
100 Jefferson County Parkway, Golden, CO 80401

**Plaintiff:**
2010-1 RADC/CADC VENTURE, LLC

v.

**Defendants:**
KAVEH BRAL and
HASHEM MIKAIL

EFILED Document
CO Jefferson County District Court 1st JD
Filing Date: Feb 01 2013 02:02PM MST
Filing ID: 49253142
Review Clerk: Beth B

▲  COURT USE ONLY  ▲

| | |
|---|---|
| Attorneys: Lino S. Lipinsky de Orlov, #13339<br>McKenna Long & Aldridge LLP<br>Address: 1400 Wewatta Street, Suite 700<br>Denver, CO  80202<br>Telephone: (303) 634-4000<br>Facsimile: (303) 634-4400<br>E-mail: llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |

**EXHIBIT Q**
**TO**
**COMPLAINT**

# GUARANTY
### (Specific Debt - Limited)

**DATE AND PARTIES.** The date of this Guaranty is September 20, 2007. The parties and their addresses are:

**LENDER:**
NEW FRONTIER BANK
2425 35th Avenue
Greeley, Colorado 80634
Telephone: (970) 339-5100

**BORROWER:**
ARVADA STRUCTURES, LLC
a California Limited Liability Company
3220 NEBRASKA AVENUE
SANTA MONICA, California 90404

**GUARANTOR:**
HASHEM MIKAIL
704 N. WALDEN AVENUE
BEVERLY HILLS, California 90210

**1. DEFINITIONS.** As used in this Guaranty, the terms have the following meanings:

A. **Pronouns.** The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together. "You" and "your" refer to the Lender.

B. **Note.** "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

C. **Property.** "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

**2. SPECIFIC DEBT GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with the Borrower from time to time, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of the following described Debt(s) of the Borrower including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

A promissory note or other agreement, No. 165670-02, dated September 20, 2007, from ARVADA STRUCTURES, LLC (Borrower) to you, in the amount of $3,000,000.00.

My liability will not exceed $3,000,000.00 of the principal amount outstanding at default, plus accrued interest, attorneys' fees and collection costs, when allowed by law, and all other costs, fees and expenses agreed to be paid under all agreements evidencing the Debt and securing the payment of the Debt. You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

**3. EXTENSIONS.** I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

**4. UNCONDITIONAL LIABILITY.** I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

**5. BANKRUPTCY.** If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims by you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

**6. REVOCATION.** I agree that this is an absolute and unconditional Guaranty. This Guaranty cannot be revoked and will remain in effect until the Debt is paid in full.

**7. PROPERTY.** I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following occur:

A. **Payments.** I fail to make a payment in full when due.

HASHEM MIKAIL
Colorado Guaranty
CO/4XX685llu000059000055660220922007Y
©1996 Bankers Systems, Inc., St. Cloud, MN *Express*
Initial _____
Page 1

B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Borrower, or any co-signer, endorser, surety or guarantor of this Guaranty or any Debt.

C. **Death or Incompetency.** I die or am declared legally incompetent.

D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Guaranty.

E. **Other Documents.** A default occurs under the terms of any other document relating to the Debt.

F. **Other Agreements.** I am in default on any other debt or agreement I have with you.

G. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. **Judgment.** I fail to satisfy or appeal any judgment against me.

I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. **Name Change.** I change my name or assume an additional name without notifying you before making such a change.

K. **Property Transfer.** I transfer all or a substantial part of my money or property.

L. **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

M. **Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason.

9. **WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. **Additional Waivers.** In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property.

(4) You, or any institution participating in the Debt, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability. In addition, until the obligations of the Borrower to Lender have been paid in full, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, partner, or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control or a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

B. **No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

C. **Waiver of Claims.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

10. **REMEDIES.** After the Borrower or I default, you may at your option do any one or more of the following.

A. **Acceleration.** You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

B. **Sources.** You may use any and all remedies you have under state or federal law or in any documents relating to the Debt.

C. **Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on default.

D. **Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the Secured Debts.

E. **Termination.** You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

F. **Attachment.** You may attach or garnish my wages or earnings.

G. **Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

H. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**11. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**12. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Guaranty. The execution and delivery of this Guaranty will not violate any agreement governing me or to which I am a party.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

**13. RELIANCE.** I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and I have signed this Guaranty to induce you to extend such credit. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from any loans and financial accommodations resulting in the creation of indebtedness guarantied hereby.

**14. APPLICABLE LAW.** This Guaranty is governed by the laws of Colorado, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**15. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing and executed by you and me. This Guaranty is the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**16. ASSIGNMENT.** If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

**20. SIGNATURES.** By signing, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR:

_____
HASHEM MIKAIL
Individually

| | |
|---|---|
| **DISTRICT COURT, JEFFERSON COUNTY, COLORADO**<br>Court Address:<br>100 Jefferson County Parkway, Golden, CO 80401 | <span style="color:red">EFILED Document<br>CO Jefferson County District Court 1st JD<br>Filing Date: Feb 01 2013 02:02PM MST<br>Filing ID: 49253142<br>Review Clerk: Beth B</span> |
| **Plaintiff:**<br>2010-1 RADC/CADC VENTURE, LLC<br><br>v.<br><br>**Defendants:**<br>KAVEH BRAL and<br>HASHEM MIKAIL | ▲  **COURT USE ONLY**  ▲ |
| Attorneys:      Lino S. Lipinsky de Orlov, #13339<br>                        McKenna Long & Aldridge LLP<br>Address:        1400 Wewatta Street, Suite 700<br>                        Denver, CO  80202<br>Telephone:   (303) 634-4000<br>Facsimile:    (303) 634-4400<br>E-mail:          llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |
| <div align="center">**EXHIBIT R<br>TO<br>COMPLAINT**</div> | |

FileName: ARVADA STRUCTURES, LLC
AccountNo. 16567002
FDIC Control No. 330300107
Custodian ID No. None
AMONo. 3044.082

## ALLONGE

THIS ALLONGE IS TO BE ATTACHED TO AND MADE AN INTEGRAL PART of the following instrument:

Note (and any amendments, modifications or changes thereto): Promissory Note
Dated: September 20, 2007
Payable by: ARVADA STRUCTURES, LLC
Payable to the Order of: NEW FRONTIER BANK
Original Principal Amount: Three Million and 00/100 Dollars ($3,000,000.00)

PAY TO THE ORDER OF 2010-1 RADC/CADC VENTURE, LLC, A DELAWARE LIMITED LIABILITY COMPANY, WITHOUT RECOURSE AND WITHOUT REPRESENTATION OR WARRANTY, EXPRESS, IMPLIED OR BY OPERATION OF LAW, OF ANY KIND AND NATURE WHATSOEVER.

FEDERAL DEPOSIT INSURANCE
CORPORATION IN ITS CAPACITY AS
RECEIVER FOR NEW FRONTIER BANK

By: _____
Name:  Vanessa A. Orta
Title:   Attorney-in-Fact

Dated as of August 26, 2010

| | |
|---|---|
| **DISTRICT COURT, JEFFERSON COUNTY, COLORADO**<br>Court Address:<br>100 Jefferson County Parkway, Golden, CO 80401 | **EFILED Document**<br>**CO Jefferson County District Court 1st JD**<br>**Filing Date: Feb 01 2013 02:02PM MST**<br>**Filing ID: 49253142**<br>**Review Clerk: Beth B** |
| **Plaintiff:**<br>2010-1 RADC/CADC VENTURE, LLC<br><br>v.<br><br>**Defendants:**<br>KAVEH BRAL and<br>HASHEM MIKAIL | ▲  **COURT USE ONLY**  ▲ |
| Attorneys:    Lino S. Lipinsky de Orlov, #13339<br>                    McKenna Long & Aldridge LLP<br>Address:      1400 Wewatta Street, Suite 700<br>                    Denver, CO  80202<br>Telephone:   (303) 634-4000<br>Facsimile:    (303) 634-4400<br>E-mail:        llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |
| **EXHIBIT S**<br>**TO**<br>**COMPLAINT** ||

2010092004    10/15/2010 03:37:03 PM
PGS    4      $26.00   DF $0
Electronically Recorded Jefferson County CO
Pam Anderson, Clerk and Recorder   TD1000 N

Prepared by and upon recordation, return to:

Name: VANESSA ORTA, ESQ.
ANDERSON, McCOY & ORTA, P.C.
Address: 100 North Broadway, Suite 2600
Oklahoma City, Oklahoma 73102
405-236-0003
AMO No. 3044.082
File Name Westwoods Shopping Center
Custodian ID No. None
Account No. 16567002
FDIC Control No. 330300107

## ASSIGNMENT OF REAL ESTATE DEED OF TRUST

KNOW ALL MEN BY THESE PRESENTS:

THAT, the **FEDERAL DEPOSIT INSURANCE CORPORATION** (acting in any capacity, the "FDIC") **IN ITS CAPACITY AS RECEIVER FOR NEW FRONTIER BANK**, at 550 17th Street, NW, Washington, D.C. 20429-0002 (hereinafter referred to as "Assignor" or "Grantor"), for value received, does by these presents, grant, bargain, sell, assign, transfer and set over to **2010-1 RADC/CADC Venture, LLC**, a **Delaware limited liability company**, its successors and assigns (hereinafter referred to as "Assignee" or "Grantee"), at 4200 W. 115th Street, Suite 100, Leawood, Kansas 66211, all right, title and interest in and to that certain:

Real Estate Deed of Trust executed by Arvada Structures, LLC, a limited liability company, organized and existing under the laws of California, dated September 20, 2007, in the original principal sum of Three Million and 00/100 Dollars ($3,000,000.00) in favor of Public Trustee of Jefferson County, Colorado, Trustee for, and on behalf of, NEW FRONTIER BANK (the "Deed of Trust"), which Deed of Trust was recorded on October 01, 2007, in the Clerk's Office of Jefferson County, State of Colorado ("Clerk's Office"), as Instrument Number 2007111492;

Any and all other documents and instruments evidencing, securing and or relating to the indebtedness and or obligations secured by the Deed of Trust and any other recorded loan documents identified herein.

The Deed of Trust, as such may have been assigned and modified, covers the following described property, less and except any portion of the property previously released and/or reconveyed:

SEE ATTACHED EXHIBIT A

TO HAVE AND TO HOLD THE SAME UNTO SAID 2010-1 RADC/CADC VENTURE, LLC, ITS SUCCESSORS AND ASSIGNS.

THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WRITTEN OR ORAL, BY THE FDIC IN ITS CAPACITY AS RECEIVER FOR NEW FRONTIER BANK OR IN ITS CORPORATE CAPACITY. THE LOAN IS CONVEYED "AS IS" AND "WITH ALL FAULTS," WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, INCLUDING AS TO COLLECTABILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, BY ANY PERSON, INCLUDING THE FDIC OR ITS OFFICERS EMPLOYEES, AGENTS OR CONTRACTORS.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

IN WITNESS WHEREOF, FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CAPACITY AS RECEIVER FOR NEW FRONTIER BANK has caused this instrument to be executed this 1st day of September, 2010, effective as of the 26th day of August, 2010.

ASSIGNOR:

FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CAPACITY AS RECEIVER FOR NEW FRONTIER BANK

By: _____
Name: J. Michael McCoy
Title: Attorney-in-Fact

## ACKNOWLEDGMENT

STATE OF OKLAHOMA            )
                             )      SS:
COUNTY OF OKLAHOMA           )

On this 1st day of September, 2010, before me personally appeared J. Michael McCoy, as Attorney-in-Fact for the FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CAPACITY AS RECEIVER FOR NEW FRONTIER BANK known to me or proved to me on the basis of satisfactory evidence to be the person who executed the foregoing instrument, and she thereupon duly acknowledged to me that she executed the same to be her free act and deed.

WITNESS my hand and official seal.

My commission expires: _____

Name of Notary:  Mary Dougherty

[Notary Seal: MARY E. DOUGHERTY, NOTARY PUBLIC, STATE OF OKLAHOMA, # 00004063, EXP 04/17/12]

# EXHIBIT A

LOT 4, WESTWOODS SHOPPING CENTER FILING NO. 2, ACCORDING TO THE PLAT RECORDED JUNE 18, 2003 AT RECEPTION NO. F1781698, COUNTY OF JEFFERSON, STATE OF COLORADO;

AND

TRACT "A", THE MEADOWS AT WESTWOODS SHOPPING CENTER, ACCORDING TO THE PLAT RECORDED FEBRUARY 28, 2002 AT RECEPTION NO. F1432695, COUNTY OF JEFFERSON, STATE OF COLORADO;

TOGETHER WITH THOSE EASEMENT RIGHTS CONTAINED IN DECLARATION OF RECIPROCAL EASEMENT AND RESTRICTIONS RECORDED FEBRUARY 11, 2002 AT RECEPTION NO. F1673475, RATIFIED BY RATIFICATION OF COMMON AREA MAINTENANCE AGREEMENT FOR WESTWOODS SHOPPING CENTER AND RATIFICATION OF DECLARATION OF RECIPROCAL EASEMENTS AND RESTRICTIONS RECORDED MARCH 17, 2003 AT RECEPTION NO. F1700516 AND FIRST AMENDMENT TO DECLARATION OF RECIPROCAL EASEMENTS AND RESTRICTIONS RECORDED JUNE 23, 2003 AT RECEPTION NO. F1784807.

TOGETHER WITH PERPETUAL NON-EXCLUSIVE EASEMENTS FOR PARKING AS CREATED BY DECLARATION OF RECIPROCAL PARKING EASEMENTS RECORDED FEBRUARY 25, 2004 AT RECEPTION NO. F1969952;

COUNTY OF JEFFERSON, STATE OF COLORADO.

The property is located in JEFFERSON County at 15200 WEST 64TH AVENUE, ARVADA, Colorado 80007.

| | |
|---|---|
| **DISTRICT COURT, JEFFERSON COUNTY, COLORADO**<br>Court Address:<br>100 Jefferson County Parkway, Golden, CO 80401 | **EFILED Document**<br>**CO Jefferson County District Court 1st JD**<br>**Filing Date: Feb 01 2013 02:02PM MST**<br>**Filing ID: 49253142**<br>**Review Clerk: Beth B** |
| **Plaintiff:**<br>2010-1 RADC/CADC VENTURE, LLC<br><br>v.<br><br>**Defendants:**<br>KAVEH BRAL and<br>HASHEM MIKAIL | ▲ **COURT USE ONLY** ▲ |
| Attorneys:   Lino S. Lipinsky de Orlov, #13339<br>                  McKenna Long & Aldridge LLP<br>Address:     1400 Wewatta Street, Suite 700<br>                  Denver, CO  80202<br>Telephone:  (303) 634-4000<br>Facsimile:   (303) 634-4400<br>E-mail:        llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |
| **DISTRICT COURT CIVIL SUMMONS** | |

**TO THE ABOVE NAMED DEFENDANT:  Hashem Mikail a/k/a Halston Mikail**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint.   If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you.  If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you.  Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

DATED:  February 1, 2013.

McKENNA LONG & ALDRIDGE LLP

Lino S. Lipinsky de Orlov, #13339

Counsel for Plaintiff, 2010-1 RADC/CADC
VENTURE, LLC

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**
DN:32239619.1

<table>
<tr><td>

**DISTRICT COURT, JEFFERSON COUNTY, COLORADO**
Court Address:
100 Jefferson County Parkway, Golden, CO 80401

**Plaintiff:**
2010-1 RADC/CADC VENTURE, LLC

v.

**Defendants:**
KAVEH BRAL and
HASHEM MIKAIL

</td><td>

EFILED Document
CO Jefferson County District Court 1st JD
Filing Date: Feb 01 2013 02:02PM MST
Filing ID: 49253142
Review Clerk: Beth B

▲ COURT USE ONLY ▲

</td></tr>
</table>

| Attorneys: Lino S. Lipinsky de Orlov, #13339<br>McKenna Long & Aldridge LLP<br>Address: 1400 Wewatta Street, Suite 700<br>Denver, CO 80202<br>Telephone: (303) 634-4000<br>Facsimile: (303) 634-4400<br>E-mail: llipinsky@mckennalong.com<br><br>*Counsel for Plaintiff, 2010-1 RADC/CADC Venture, LLC* | Case Number:<br><br>Division: |
|---|---|

| **DISTRICT COURT CIVIL SUMMONS** |
|---|

**TO THE ABOVE NAMED DEFENDANT:  Kaveh Bral**


**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint.  If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you.  If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you.  Your answer or counterclaim must be accompanied with the applicable filing fee.


If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

DATED:  February 1, 2013.

McKENNA LONG & ALDRIDGE LLP

_____
Lino S. Lipinsky de Orlov, #13339

Counsel for Plaintiff, 2010-1 RADC/CADC
VENTURE, LLC

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**
DN:32239615.1