IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No. 13-cv-00550-WYD-CBS

2010-1 RADC/CADC VENTURE, LLC

    Plaintiff,

v.

KAVEH BRAL, and
HASHEM MIKAIL,

    Defendants.

_____

**ORDER**
_____

THIS MATTER is before the Court on plaintiff, 2010-1 RADC/CADC Venture, LLC's, Motion For Summary Judgment [ECF No. 53]. For the reasons stated below, the motion is GRANTED.

**BACKGROUND**

This suit arises out of two guarantors' alleged failure to honor their guaranties.

Defendants, Kaveh Bral and Hashem Mikail ("the Defendants"), own Arvada Structures and Denver Structures. The Defendants formed Arvada Structures and Denver Structures to acquire and develop a 5,000 square-foot retail shopping center. In order to finance the shopping center, Arvada Structures and Denver Structures borrowed a total of $14,476,000 from New Frontier Bank. Arvada Structures obtained two loans from New Frontier Bank; one for $11,000,000 and another for $3,000,000. Denver Structures obtained one loan from New Frontier Bank for $476,000. The Defendants personally guaranteed all three loans.

Subsequent to administering the loans to Arvada Structures and Denver Structures, New Frontier Bank failed and the Federal Deposit Insurance Corporation ("FDIC") took the over New Frontier Bank as its receiver. In a series of transactions on August 26, 2010 and September 1, 2010, the FDIC sold, assigned, and transferred to plaintiff, 2010-1 RADC/CADC Venture, LLC ("Venture"), all rights associated with the three loans, including all rights associated with the Defendants' guaranties. Venture alleges that Arvada Structures defaulted on its loans on February 28, 2009 and that Denver Structures defaulted on its loan on June 8, 2009. Venture further alleges that the Defendants are in default of their guaranties because they have not paid the money owed by Arvada Structures and Denver Structures.

On February 1, 2013, Venture filed suit in the District Court for Jefferson County, Colorado, Case No. 2013CV328, alleging that the Defendants breached their guaranties by not paying the sums owed by Arvada Structures and Denver Structures. On March 2, 2013, the Defendants removed the case to the United States District Court for the District of Colorado on the basis of diversity subject matter jurisdiction. ECF No. 1. On October 31, 2013, Venture filed a Motion For Summary Judgment [ECF No. 53] arguing that it is entitled to judgment as a matter of law because the Defendants breached their guaranties and that it is owed a total of $27,071,623.49 in damages, which includes the principal and interest on the three loans and attorney fees and costs.

## ANALYSIS

### A. Legal Standard for a Motion for Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, [the court must] 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *Horizon/CMS Healthcare*, 220 F.3d at 1190. "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.*

"The burden of showing that no genuine issue of material fact exists is borne by the moving party." *Horizon/CMS Healthcare*, 220 F.3d at 1190. "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Atl. Richfield Co.*, 226 F.3d at 1148 (quotation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Sw. Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

**B. Venture's Motion For Summary Judgment [ECF No. 53]**

Venture argues that there is no genuine issue of material fact that the Defendants breached their guaranty contracts.

When federal jurisdiction is based on diversity subject matter jurisdiction, as is the case here, federal district courts apply the substantive law of the forum state. *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994). Under Colorado state law, a plaintiff seeking to establish a breach of contract claim must show: "(1) the existence of a

contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (internal citations omitted).

### 1. Elements of Breach of Contract Claim

#### a. Existence of a Contract

The Defendants personally guarantied all three loans from New Frontier Bank. In each of the six guaranty contracts, the Defendants agreed to absolutely and unconditionally guaranty payment on the loans. Venture attached all six guaranty contracts to this motion. *See* ECF Nos. 53-5, 53-6, 53-8, 53-9, 53-11, & 53-12. Thus, this element is satisfied.

#### b. Performance by the Plaintiff

It is undisputed that New Frontier Bank, Venture's predecessor, performed by administering the three loans to Arvada Structures and Denver Structures. Thus, this element is satisfied.

#### c. The Defendants' Failure to Perform / Breach

It is undisputed that the Defendants have not paid Venture the sums owed under the loans. Therefore, the Defendants have failed to perform and have breached the guaranty contracts.

#### d. Damages

Venture suffered damages because the Defendants failed to repay the loans. Venture argues that its damages include the principal and interest on the loans, attorney fees, and costs incurred in enforcing its rights to the property that secured the loans.

### i. Principal and Interest on Loans

As of October 31, 2013, Arvada Structures owes Venture $11,000,000 in principal and $6,888,086.41 in interest on the first loan and $3,000,000 in principal and $1,879,141.66 in interest on the second loan.[1]  As of October 31, 2013, Denver Structures owes Venture $279,435.57 in principal and $10,490.48 in interest on its loan.[2]

### ii. Attorney Fees and Costs

Venture also argues that attorney fees and costs related to enforcement of their rights under the loans is part of the damage calculation.

### (a) Attorney Fees

Pursuant to the Defendants' guaranty contracts regarding Arvada Structures' first loan from New Frontier Bank, the Defendants agreed to "pay or reimburse Lender [New Frontier Bank] for all costs associated (including reasonable attorneys' fee and legal expenses) incurred by Lender [New Frontier Bank] in connection with the protection, defense, or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings." ECF No. 53-5, p. 2, ¶ 5 / ECF No. 53-6, p. 2, ¶ 5.  Pursuant to the Defendants' guaranty contracts regarding New Frontier Bank's loan to Denver Structures and New Frontier Bank's second loan to Arvada Structures, the Defendants agreed that:

> On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt.  To the extent permitted by

---

[1] Interest accrues at a rate of $3,895.83 per day on the first loan and $1,062.50 per day on the second loan. ECF No. 53-3, p. 6, ¶¶ 25-26 & p. 8, ¶¶ 45-46.

[2] Interest accrues at a rate of $98.97 per day. ECF No. 53-3, p. 7, ¶¶ 35-36.

>    law, expenses included, but are not limited to, reasonable
>    attorneys' fees, court costs and other legal expenses.

ECF No. 53-8, p. 4, ¶ 11 / ECF No. 53-9, p. 4, ¶ 11 / ECF No. 53-11, p. 4, ¶ 11 / ECF No. 53-12, p. 4, ¶ 11.

It is clear that the guaranty contracts' express terms provide for attorney fees. Venture states that it is owed $349,172.17 for "expenses incurred in connection with this action" and $111,342.94 for "expenses associated with the receivership of the Arvada property." ECF No. 53, p. 15.[3]  Venture attached documents evidencing these fees to support its argument. ECF Nos. 53-22, 53-23, 53-30, & 53-31.  Thus, the total amount of attorney fees incurred in connection with this action is $460,515.11.

### (b) Costs

Venture states that it is owed $1,287,180.61 for payments it "made to remove mechanics' liens from title to the Arvada property." ECF No. 53, p. 15.  Venture attached a document that evidences such costs. ECF No. 30.

### iii. Defendants' Argument Regarding Offset

The Defendants argue that because it is highly likely that Venture will foreclose on the Arvada property, Venture's damages should be offset by the anticipated or expected value of the foreclosure sale.  The Defendants do not cite any case law or provision from the guaranty contracts that supports this argument.  Further, I will not speculate as to what price the Arvada property will sell for at foreclosure.  Thus, the Plaintiffs' damages will not be offset.

### e. Conclusion

Venture has established all elements for a breach of contract claim.  However,

---

[3] The Arvada property is the property that Arvada Structures offered as security for its two loans from New Frontier Bank. *See* ECF Nos. 53-28, p. 2 & 53-29, p. 2.

the Defendants argue that Venture's breach of contract claim fails because they were fraudulently induced to enter into the guaranty contracts and because the Plaintiffs breached the implied covenant of good faith and fair dealing. I address each argument in the following section.

### 2. The Defendants' Arguments

#### a. Fraud in the Inducement

Venture argues that the Defendants' fraud in the inducement defense is barred under *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 460 (1942), and under the Colorado Credit Agreement Statute of Frauds, COLORADO REVISED STATUTES § 38-10-124.

#### i. *D'Oench, Duhme & Co.* and 12 U.S.C. § 1823(e)

The *D'Oench, Duhme* doctrine prevents debtors/guarantors from asserting defenses to payment on obligations that are based on side agreements not evidenced in the written instruments creating such obligations. The *D'Oench, Duhme* doctrine is codified in 12 U.S.C. § 1823(e). Pursuant to 12 U.S.C. § 1823(e):

> No agreement which tends to diminish or defeat the interest of the Corporation [Federal Deposit Insurance Corporation] in any asset acquired by it under this section or section 11 [12 USCS § 1821], either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement--
>
> (A) is in writing,
>
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (C) was approved by the board of directors of the

> depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

The *D'Oench, Duhme* doctrine "applies to actions brought by FDIC's assignees as well as by the FDIC itself." *UMLIC-Nine Corp. v. Lipan Springs Dev. Corp.*, 168 F.3d 1173, 1179 (10th Cir. 1999) (citing *Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 564 (6th Cir. 1997)).  Thus, the *D'Oench, Duhme* doctrine applies in this case because Venture is the FDIC's assignee.

In order for the *D'Oench, Duhme* doctrine to bar a debtor/guarantor's defense to payment, an agreement must exist between the creditor and debtor/guarantor.  The substance of the Defendants' fraud in the inducement defense and the purported agreement at issue is that New Frontier Bank (the creditor) "would never seek to recover" on the Defendants' guaranties. ECF No. 58, p. 7, ¶ 10 / p. 8, ¶ 16 / p. 9, ¶ 22.  I need not address whether the alleged statements by New Frontier Bank representatives constitute agreements because the guaranties that create the Defendants' obligations do not evidence any such statements in writing.  This the precise situation in which the *D'Oench, Duhme* doctrine applies to protect the FDIC and its assignees from a defense to payment based on an alleged secret agreement which is not evidenced in the documents creating the debtor's obligation(s).  Because the *D'Oench, Duhme* doctrine applies to FDIC assignees and because the alleged agreement, assuming *arguendo* that such statements constitute an agreement, is not evidenced in a written document creating the Defendants' obligations, the *D'Oench, Duhme* doctrine applies to bar the

Defendants' fraud in the inducement defense. Because the *D'Oench, Duhme* doctrine bars the Defendants' fraud in the inducement defense, I need not address Venture's argument that the Colorado Credit Agreement Statute of Frauds, C.R.S. § 38-10-124, bars the Defendants' defense.

### b. Venture's Alleged Breach of the Implied Covenant of Good Faith and Fair Dealing

The Defendants argue that Venture breached the implied covenant of good faith and fair dealing by failing to timely bring this action against the Defendants. Under Colorado state law, "every contract contains an implied covenant of good faith and fair dealing." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995) (citations omitted). "The good faith performance doctrine is generally used to effectuate the intentions of the parties or to honor their reasonable expectations." *Id.* (citations omitted).

Simply stated, the Defendants argue that the four year delay from the time the Defendants were in default and the time Venture instituted this action is a breach of the covenant of good faith and fair dealing. I disagree. Venture was under no obligation to immediately commence suit to enforce the Defendants' guaranty contracts. In the Defendants' guaranty contracts regarding New Frontier Bank's first loan to Arvada Structures, the contracts state that "[t]he liability of the Undersigned shall not be affected or impaired by any of the following acts or things . . . any delay or lack of diligence in the enforcement of indebtedness, or any failure to institute proceedings . . . " ECF Nos. 53-5, p. 3, ¶ 6 & 53-6, p. 3, ¶ 6. In the Defendants' guaranty contracts regarding New Frontier Bank's loan to Denver Structures and the second loan to Arvada Structures, the Defendants agreed "that any delay or lack of diligence in the enforcement of Debt, or any failure to file a claim or otherwise protect any of the Debt, in

no way affects or impairs my liability." ECF Nos. 53-8, p. 3, ¶ 9(A)(8) / 53-9, p. 3, ¶ 9(A)(8) / 53-11, p. 3, ¶ 9(A)(8) / 53-12, p. 3, ¶ 9(A)(8).  Thus, the guaranty contracts' plain text prevents any delay in bringing an action to enforce the guaranties from impairing or affecting the Defendants' liability.  Therefore, I find that the near four year delay in bringing this action to enforce the Defendants' obligations under the guaranty contracts is not a breach of the implied covenant of good faith and fair dealing.

## CONCLUSION

After careful consideration of the matter before this Court, I find that there are no genuine issues of material fact regarding the Venture's breach of contract claim and Venture is entitled to judgment as a matter of law on that claim.  Accordingly, it is

ORDERED that Venture's Motion For Summary Judgment [ECF No. 53] is **GRANTED**.  It is

FURTHER ORDERED that Venture **SHALL SUBMIT** an updated damages calculation and statement of attorney fees (including all supporting documentation as to why the amount of attorney fees is reasonable and warranted) **on or before Wednesday, August 20, 2014**.  The Defendants **MAY** file a response to the updated damages calculation and statement of attorney fees **on or before Wednesday, September 3, 2014**.  Should the Defendants file a response, they **SHALL NOT** rehash any arguments already posited with the Court.  It is

FURTHER ORDERED that a hearing on damages and attorney fees is set for **Thursday, October 9, 2014 at 10:00 a.m. in Courtroom A-1002**.  To be clear, the sole purpose of this hearing is to determine the exact amount of damages and attorney fees awarded to Venture.

- 11 -

Dated: July 30, 2014.

                                        BY THE COURT:

                                        /s/ Wiley Y. Daniel
                                        Wiley Y. Daniel
                                        Senior U. S. District Judge